Wagener *v.* Bill.

[MONROE GENERAL TERM, March 5, 1855. *Johnson, Welles* and *T. R. Strong,* Justices.]

---

WAGENER and wife *vs.* BILL and wife.

The presumption of coercion, which the law raises where a criminal act is committed by a married woman in the presence of her husband, is only *prima facie,* and like other presumptions, may be repelled.

Where the evidence, in an action against husband and wife for an assault and battery, shows clearly that the wife was the principal and only offender, the case should at least be submitted to the jury.

In such a case it is competent to convict the husband, and acquit the wife if she is exempt from liability by reason of the coercion of her husband, or for any other cause. It is therefore erroneous to nonsuit the plaintiff, as to both defendants, on account of the exemption of the wife.

APPEAL from the Steuben county court. The action was commenced in the county court, and was for an assault and battery committed by the defendant, Catharine Bill, upon the plaintiff, Mary Wagener. The answer of the defendants denied

the assault and battery charged, and secondly, set up the defense of *son assault demesne.* The trial came on in the court below in February, 1854, when the plaintiffs introduced as a witness Mary Hart, who testified as follows: "I live in Cohocton and know the parties to this action; I am the plaintiff's daughter; I recollect a difficulty between Mrs. Bill and mother; it will be a year next May; mother is one of the plaintiffs; it was at the plaintiff's house one Wednesday about 6 or 7 o'clock P. M. The defendants, Mr. and Mrs. Bill, came into the plaintiffs' house; Mr. Bill went across the room and sat down in a chair; Mrs. Bill was then standing at the door. They did not knock at the door when they came in. Bill asked mother where Mr. Wagener was, and mother said he was not at home; was in the woods at work. Mr. Bill then said he wanted to see father, and he then asked mother what it was about the buggy ride with father and Mrs. Bill; he asked mother if she knew any thing about the buggy ride, and she said she did. Mrs. Bill yet stood by the door. Mother told Mrs. Bill she knew surely about the buggy ride; Mrs. Bill said that is not so. Mother said, ask my children, they were all here when you asked Wagener for the buggy ride. Mrs. Bill said, you are a liar, and you want your children to lie too. Mother said it was so, and then Mrs. Bill called mother a whore. Mrs. Bill kept on talking and calling mother a whore and other nasty names. Mother said, if you talk so, go out of doors, and not talk so in my house before the children; the small children were present. Mrs. Bill said she would go out when she was a mind to, and not before, and then Mrs. Bill came further in the room, and called mother a whore again. Mother then opened the door and told Mrs. Bill to go out doors and not talk so in the house. Then Mr. Bill got up and went out the door, and Mrs. Bill started to go out after him; then at the door as she was a going out after her husband, she turned around and struck mother in the face and pushed her back, and then went out after her husband. When they got as far as the stoop, Mrs. Bill spoke to her husband and wanted to know why he did not say something to mother; mother said that is enough now, and Mr. Bill then called mother a whore.

Wagener *v.* Bill.

Mrs. Bill then slapped her hands and said, that is right. When Mrs. Bill came to the house she shut the door and stood near it. Our people then lived in Wayland, about a mile from Bill's."

Elizabeth Wagener, another witness for the plaintiffs, testified to substantially the same facts as the witness Mary Hart, and the plaintiffs thereupon rested.

The defendants, by their counsel, moved for a nonsuit, on the ground that the assault and battery having been committed by the wife in presence of the husband, the presumption was that the act was done through fear and compulsion of the husband, and the wife not liable, and therefore the action should have been brought against the husband alone, and not against the husband and wife jointly. The court decided that the action would not lie against the husband and wife jointly; to which decision and ruling the plaintiff's counsel excepted. The plaintiff's counsel then requested the court to submit the question to the jury whether the assault and battery was committed through fear and coercion of the husband, or voluntarily. But the court refused so to do, and the plaintiff's counsel excepted. The plaintiffs by their counsel then requested the court to discharge the defendant Catharine Bill and let the action proceed against her husband, the defendant, John Bill, which the court refused to do, and the plaintiffs by their counsel excepted. No further evidence being offered by either party, the plaintiffs were nonsuited, and the plaintiffs excepted. Judgment was entered in the county court, upon the nonsuit, for $96.26 costs of the defense. From this judgment the plaintiffs appealed.

*McDowell & Spooner,* for the appellants.

*D. W. Noyes* for the respondents.

*By the Court,* WELLES, J. It is an established general doctrine that a married woman is not punishable for committing a crime in the presence of, and by the command or coercion of her husband. The rule, however, does not extend to such offenses as are *mala in se* and prohibited by the laws of nature, or

to those which are highly heinous. (*Barb. Cr. Law,* 2d ed. b. 3, *ch.* 3, *pp.* 274 *to* 278. 1 *Russell on Crimes, pp.* 17 *to* 24, *5th Am. from* 3d *Lond. ed.* 2 *Starkie's Ev.* 398, *5th Am. ed. by Metcalf, Ingraham & Gerhard, from a new Lond. ed.* 1834. *Roscoe's Cr. Ev.* 955, 6. 4 *Bl. Com.* 28, 29. *Commonwealth* v. *Neal,* 10 *Mass. R.* 152.)

Whether this exemption of the wife extends to mere misdemeanors, the authorities do not agree. The case of the *Commonwealth* v. *Neal,* (*supra,*) was an indictment for an assault and battery, and the rule was held to apply ; and Chancellor Kent says " the husband is liable for the torts and frauds of the wife committed during coverture. If committed in his company, or by his order, he alone is liable. If not, they are jointly liable, and the wife must be joined in the suit with her husband." (2 *Kent's Com.* 149.) (*See also Barb. Cr. L.* 276, *supra.*) In a note to 4th *Bl. Com. Dean's N. Y. ed.* 1838, it is said, " In all misdemeanors it appears that the wife may be found guilty with her husband. It is said the reason why she was excused in burglary, larceny, &c. was because she could not tell what property the husband might claim in the goods. (10 *Mod.* 63, 335.) But the better reason seems to be, that by the ancient law, the husband had the benefit of clergy, if he could read, but in no case could women have that benefit ; it would therefore have been an odious proceeding to have executed the wife and to have dismissed the husband with a slight punishment; to avoid this it was thought better that, in such cases, she should be altogether acquitted. But this reason did not apply to misdemeanors." In *Starkie's Evidence* above referred to, it is laid down that the doctrine does not extend to assaults and batteries, or as it seems, to any other forcible and violent misdemeanors committed jointly by the husband and wife. There are many other authorities to the same effect. Indeed, it seems to be the settled rule in the English courts ; and in Virginia it was held that a joint action of trespass might be maintained against the husband and wife for a joint assault and battery by them both. (*Roadcap* v. *Sipe,* 6 *Gratt.* 213.)

But to whatever class of cases the doctrine in question is to be limited, we are entirely clear that the presumption of coercion which the law raises where the acts complained of are done by the wife in the presence of the husband, is only *prima facie*, and, like other presumptions may be repelled. (2 *Kent's Com.* 150. *Starkie's Ev. supra. Russ. on Cr.* 22. *Commonwealth* v. *Lewis*, 1 *Metc.* 151, 3.)

In the present case, the evidence shows clearly that the wife defendant was the principal and only offender. There is reason to believe that the dispute between the female parties to the action had its origin in some gossip concerning an affair of gallantry between the male plaintiff and the female defendant, on account of which the latter was peculiarly sensitive; and in which, perhaps, the female plaintiff felt a little solicitude. Be that as it may, no one can fail to see from the evidence, that so far from any coercion having been employed by the husband defendant, all that he appears to have done of an offensive character, was the application of an opprobrious epithet to his fair adversary, and not even that, until after he had left the house, and after his wife, under the influence of her own excited feelings, had reproached him for not taking part in her quarrel; and this *Parthian arrow* of the retreating husband was not discharged until after his pugnacious wife had committed the assault and battery complained of. It is merely ridiculous to call this coercion by the husband. If there was any coercion it was by the wife, and her only. It was at least clearly a case to have been submitted to the jury.

Again, even assuming this was a case of coercion by the husband, it was no ground for nonsuiting the plaintiff. On the hypothesis mentioned, the husband was clearly liable. The action was joint and several in its nature, and it was entirely competent to convict the husband and acquit the wife if she was exempt from liability by reason of the coercion of her husband or for any other cause.

For both of the foregoing reasons we think the judgment should be reversed, and a new trial ordered in the county court; with costs to abide the event.

Ordered accordingly.

[MONROE GENERAL TERM, March 5, 1855. *Johnson, Welles* and *T. R. Strong,* Justices.]