## ORMEL A. HALL *vs.* THOMAS P. WHITE AND OTHERS.

Where a judgment is obtained against a husband and wife, in an action in which the body of a defendant can be taken on execution, the plaintiff is entitled to an execution running against the bodies of both husband and wife.

And where both are committed on the execution, and the husband is discharged upon the poor debtor's oath or in any other mode, the wife is not thereupon entitled to a discharge, but can be relieved only in the same mode as other execution debtors.

The English practice in such case, of discharging the wife on motion to the court, has never prevailed here.

The liability of bail for a married woman is the same as that of bail for any other defendant.

The return of *non est* on the execution is *prima facie* evidence of an avoidance by the principal, for the purpose of subjecting the bail, but if shown to have been made without the exercise of ordinary diligence, it will be held fraudulent and of no effect.

Whether such diligence has been exercised is a question of fact, to be determined in view of all the circumstances.

The officer is not legally bound to defer the return of the execution till the expiration of its term, and the bail can take no advantage of the fact that he has not done so unless he can show that he has been actually prejudiced thereby.

The defendant had given special bail for a husband and wife, in an action against them both for slander spoken by her. Judgment was rendered against them both on the 12th day of March, 1856. The wife remained at her usual place of abode, within the jurisdiction, until the 15th day of March, when she left the state, and did not return until more than sixty days after the rendition of the judgment. The plaintiff took out execution on the 8th day of May, and put it into the hands of a sheriff's deputy for service, who, on the 9th of May, made demand thereon at the place of abode of the wife, and searched for goods and chattels belonging to her, and for her body, but could find neither. He then made demand upon the husband, who neglecting to pay, or to turn out property, he levied the execution on his body and committed him to jail. The officer then, on the 12th day of May, returned the execution with his doings endorsed thereon. The husband was afterwards discharged from jail as a poor debtor. After he was discharged, and after the expiration of sixty days from the rendition of the judgment, but before the next term of the court, the wife returned to the precincts of the officer, who was informed of the fact, but did not arrest her. It did not appear however that he knew at what house she was to be found, or that she was not protected therein, nor that it was within the life of the execution. In an action brought against the bail, it was held, that he was not discharged by reason either of the neglect of the plaintiff to take out his execution at an earlier day, or of any want of fairness or diligence on the part of the officer in his proceedings upon the execution.

Hall *v.* White.

Held also, that although the wife had no separate estate and no property whatever, the rule of damages was the amount of the original judgment, with interest thereon from the time of the return of *non est* on the execution, and the cost of the execution and officers' fees thereon.

ACTION of debt on a recognizance of the defendants as special bail.

The facts, as stated by the judge of the superior court, for the purpose of taking the advice of this court thereon, were as follows :

On the 24th day of November, 1853, the present plaintiff brought an action on the case for slander, against Horace Booth, and Harriet Booth his wife, for words spoken by the wife, to the county court for Fairfield county. The officer serving the writ, which was one of attachment against the bodies of the defendants, arrested both the said Horace and Harriet Booth, and both gave bail to the officer for their appearance before the court. The case came by legal removal and continuances to the superior court holden at Bridgeport on the first Tuesday of March, 1856, at which term, before pleadings were entered in the action, the plaintiff required special bail, and thereupon the said Horace and Harriet Booth as principals, and the defendant White as surety, entered into a recognizance before the court in the sum of $2,000, conditioned that the said Horace and Harriet Booth should abide final judgment in the action. The plaintiff afterwards, during the same term, on the 12th day of March, recovered judgment against the said Horace and Harriet in the action, for the sum of $250 damages and $66.09 costs. On the 8th day of May, 1856, execution was issued by the clerk of the court against the said Horace and Harriet for the amount of the judgment, and was placed in the hands of Charles Keeler, a sheriff's deputy, to be served, who, on the 9th day of May, made demand at the usual place of abode of the said Harriet in Bridgeport, of the sums due on the execution, which she neglected to pay ; and afterwards, on the same day, made diligent search throughout his precincts for goods and chattels of the said Harriet, but could find none ; and afterwards, on the same day, made diligent search

VOL. XXVII. 62

for her body throughout his precincts, but was unable to find her; and afterwards, on the same day, made demand of the said Horace of the sums due on the execution, which he refused and neglected to pay; and afterwards, on the same day, made diligent search throughout his precincts for goods and chattels of said Horace sufficient to satisfy the execution, but could find none; and afterwards, on the same day, levied the execution on the body of the said Horace, and committed him to jail; and on the 12th day of May returned the execution to the clerk of the court, stating these facts in his return thereon.    The said Horace Booth was afterwards, on taking the poor debtor's oath, discharged from jail according to law. The said Harriet remained in Bridgeport for three days after the judgment was rendered, when she left the state, and did not return till more than sixty days had elapsed after the rendition of the judgment.    During all the time of these proceedings she had not any separate estate, nor any estate whatever.    After the said Horace was discharged from jail, and after the return of the execution to the clerk of the court, and after more than sixty days had elapsed from the rendition of the judgment, and before the next session of the court, the said Harriet returned to Bridgeport, and the officer was notified of the fact of her return, but he did not arrest her. The judgment had never been paid or otherwise satisfied.

Upon these facts the case was reserved for the advice of this court, as to what judgment should be rendered, and as to the amount of damages, if any, which the plaintiff ought to recover.

*Beardsley* and *Seeley*, with whom was *Loomis*, for the plaintiff.

Due and reasonable diligence and entire fairness were used by the officer in serving the execution.    This is held to be sufficient.    *Fitch* v. *Loveland*, Kirby, 380.    *Johnson* v. *Smith*, 1 Root, 373.    *Edwards* v. *Gunn*, 3 Conn., 316.    *Newell* v. *Hoadley*, 8 id., 381.    When the facts are admitted or found, the " avoidance " is a question of law.    *Beebe* v. *Gardner*, 11 Conn., 104.    Where a suit is brought against the hus-

band and wife jointly, the wife is liable to be imprisoned in the same manner as any other party, and there is no power to discharge her from imprisonment except by due course of law. 1 Swift Dig., 30. In an attachment on mesne process against husband and wife both must be arrested. *Roberts* v. *Mason*, 1 Taunt., 253. *Carpenter* v. *Faustin*, 1 Salk., 114. *Cornish* v. *Marks*, 6 Mod., 17. *Harrison* v. *Bearcliffe* 2 Stra., 1272. The wife may, on motion to the court, at its discretion, be discharged from arrest on the mesne process on giving common bail, but the husband could not be discharged without causing special bail to be put in for both. Authorities *supra*. The wife can only be discharged on motion to to the court, and this privilege she may waive, and does waive by joining in special bail. *Partridge* v. *Clark*, 5 T. R., 194. *King* v. *Lacey*, 8 Conn., 499. *D'Argent* v. *Vivant*, 1 East., 330. *Laferre* v. *Johnson*, 2 Stra., 745. *Stewart* v. *Howard*, 15 Barb., 26. *Smith* v. *Taylor*, 11 Geo., 20. *Seal* v. *Wigram*, 12 Johns., 88. On *final process*, both husband and wife may be taken on execution, or she may be taken without him. Esp. Dig., 327. Tidd's Prac., 173. *Cooper* v. *Huchin*, 4 East., 521. *Pitts* v. *Miller*, 2 Stra., 1167. *Finch* v. *Duddin*, id., 1237. *Langstaff* v. *Rain*, 1 Wils., 149. *Anon.*, 3 id., 124. *Wilmot* v. *Butler*, Sayer, 149. *Sparkes* v. *Bell*, 8 B. & C. 1. *Chalk* v. *Deacon*, 6 J. B. Moore, 128. *M'Kinstry* v. *Davis*, 3 Cow., 339. And she can not be discharged from execution unless there is collusion and fraud between the plaintiff and her husband to keep her imprisoned. Authorities *supra*.

. The damages should be the amount of the judgment rendered in the original action, with interest, and the costs made on the execution. Rev. Stat., tit. 1, § 42.

*Hawley*, for the defendants.

There was neither diligence nor fairness in the conduct of the plaintiff or of the officer. The latter returned the execution when it had run but a few days. The wife returned within the life of the execution, and might have been taken if the officer had chosen to take her. The judgment was

Hall *v.* White.

rendered on the 12th of March, and yet the execution was not taken out till the 8th day of May, four days before the expiration of the sixty days. It should have been taken out and put into the hands of an officer soon after the rendition of the judgment. The officer ought also to have notified the bail, that they might have her body to deliver to the officer. The law requires the utmost fairness on the part of both creditor and officer in all proceedings affecting the bail.

But we claim that the woman could not have been legally taken and imprisoned—and that if she could have been in the first instance, yet that she could not have been held for a moment after her husband was discharged. In England the practice has been variant. There has been no decision on the point in our own courts. Swift, it is true, lays down the law as claimed on the other side, but he cites no authority in support of his statement. 1 Swift Dig., 30. Reeve (*Dom. Rel.*, 69,) says, that whenever the husband is released, the wife must also be released, even if he has broken jail. The prevailing English authorities are to the same effect. 3 Bla. Com., 414. 1 Tidd's Prac., 173. *Pitt* v. *Thompson*, 1 East., 16. *Collins* v. *Rowell*, 1 New R., 54. *Waters* v. *Smith*, 6 T. R., 451. *Pritchett* v. *Cross*, 2 H. Bla., 17. *Wardell* v. *Gooch*, 7 East., 582. *Edwards* v. *Rourke*, 1 T. R., 486. Cro. Car., 513. 1 Bac. Ab. *Baron and Feme*, L. *Slater* v. *Mills*, 7 Bing., 606. Under the English practice, and that of this country, if arrested she will be discharged at once on motion. It is not a matter of discretion with the court whether to discharge her on the motion, but the duty of the court, in the absence of any fraud on her part. *Olcott* v. *Lilley*, 4 Johns., 407. If she could not be holden if taken, will it be required of the bail that they go through the form of surrendering her, a proceeding of no substantial benefit to any body? Her giving bail does not operate as a waiver of her exemption. She was not competent as a married woman to enter into a recognizance. If she is not liable to arrest and imprisonment, it is very clear that her bail can not be liable in this case. They are necessarily discharged the moment that she ceases to be liable. *Trinder* v. *Shirley*,

Doug., 45. *Wooley* v. *Cobbe*, 1 Burr., 244. *Seaman* v. *Drake*, 1 Caines, 9. 1 Tidd's Prac., 243. *Schermerhorn* v. *Schermerhorn*, 5 Wend., 113. The doctrine which we maintain is in full harmony with the spirit of judicial decisions and legislation at the present time, which tends to the releasing of women from common law burdens.

If judgment must be rendered against the defendants, it should be for only nominal damages. This is all that could have been obtained by the plaintiff if the bail had surrendered the woman. It is found that she had no property of any kind, and she would of course have been discharged on the poor debtor's oath, if she could not have obtained her discharge upon motion to the court.

SANFORD, J. This is an action of debt, on a recognizance of special bail for Horace Booth and Harriet his wife, in an action of slander for words uttered by the wife, in which action Hall, the present plaintiff, recovered judgment on the 12th of March, 1856. Both of the defendants were then in this state, but, at the end of three days after judgment, said Harriet left the state, and did not return to it until after the lapse of more than sixty days from the rendition of the judgment—after her husband had been committed to prison on the execution, and discharged as a poor debtor—and after the execution had been returned with the officer's indorsement of *non est* as to the wife, and of his levy upon and commitment of the husband—though before the session of the court next after that in which the judgment was rendered. The execution was in fact taken out on the 8th of May, 1856, delivered to the officer for service on the 9th, levied on the husband on the same day, and returned on the 12th of the same month. How long the husband remained in prison does not appear, but, as he was discharged as a poor debtor, he must have remained there until the 17th of May at least. (Rev. Stat., tit. 43, § 33.) It is found also, that when the wife returned the officer was notified of the fact, and that she was destitute of property.

Upon these facts the defendants claim that the plaintiff

is not entitled to recover, because, the husband having been committed to prison and discharged therefrom in due course of law, the wife was not liable to imprisonment, and consequently her bail was discharged; and that, if her bail is liable at all, he is liable for nominal damages only, it being found that she was destitute of property.

We can not assent to the defendants' claim. When the judgment is against husband and wife, the execution must follow the judgment, and if the nature of the action is such as to warrant the issuing of a *ca. sa.* against unmarried persons, that must go against both of the defendants as in other cases. 2 Kent Com., 150. 1 Sw. Dig., 29, 30. 2 Bright on Husband and Wife, 83. 2 Arch., Prac., 159. The doctrine advanced in 3 Blackstone's Commentaries, 414, that the *ca. sa.* should issue against the husband alone, has not been universally recognized as law, and has never been sanctioned by any direct decision of this court. No authority is cited in support of it, except an anonymous case in Cro. Car., 513, which, according to Ld. Denman, Ch. J., in *Newton* v. *Boodle,* 9 Ad. & El., N. S., 963, " is not very satisfactory and a little contradictory;" and the dictum of Blackstone is, in the case last mentioned, denied by the whole court. See also *Langstaff* v. *Rain et ux.,* 1 Wils., 149, and *Anon.,* 3 id., 124. So in New York it is held, (*McKinstry* v. *Davis and wife,* 3 Cow., 339,) that the wife is liable to be imprisoned on a *ca. sa.* with or without her husband, though it is otherwise as to mesne process. And so is the law in Massachusetts. *Commonwealth* v. *Badlam,* 9 Pick., 362. The wife then was liable originally to be taken in execution.

But it is claimed, that the husband having been discharged and no longer liable to imprisonment on the execution, the wife could not then be taken. If however, as we have seen, the wife may be imprisoned on a *ca. sa.* without her husband, it is not easy to see how, on principle, the husband's discharge as a poor debtor, at any time, can furnish a legal reason for the exoneration of the wife. It is true, that when the wife is taken in execution on a judgment against her and her husband, if she has no property out of which the

judgment can be satisfied, the court of Queen's Bench in England will generally order her to be discharged. 2 Arch. Prac., 159. But Chief Baron Pollock, in *Benyon* v. *Jones*, (15 Mees. & Wels., 566,) said:—" The practice appears to be of very recent date, and to rest on no principle whatever. The writ of *ca. sa.* is the right of the plaintiff, as the result of his judgment, and it must be admitted that the practice is rather making the law than administering it." And it seems to be agreed, that the motion for the wife's discharge is addressed to the equitable discretion of the court, and is granted, if at all, *ex gratia*, and not as a matter of strict legal right. *Edwards* v. *Martyn*, 33 E. L. & E., 86, 87.

No such practice has obtained in this state. It is the right of the party to have his execution follow the judgment, and the wife, when taken in execution, can be relieved only in the same manner as other execution debtors are relieved. Our courts have never assumed the power to discharge in this summary way, and we think the exercise of such a power by our law unjustifiable.

By our law then, the same legal principles which determine the liabilities of special bail in other cases, are applicable in the case of a married woman. The creditor is *de jure* entitled to his remedy against her person, and the responsibility of special bail for her is the same as for any other defendant.

The obligation of bail arising, as it is said by Ch. J. Hosmer, in *Edwards* v. *Gunn*, (3 Conn., 318,) from contract and the law conjointly, his privilege is extended beyond the express condition of his bond, so that, in order to subject him on his undertaking, there must be not only a non-performance of his contract according to its terms, but also an avoidance of the principal and a return of *non est* on the execution. The return of *non est* is *prima facie* evidence of an avoidance, but is liable to be falsified; and if made without the exercise of common and ordinary diligence on the part of the officer to arrest the debtor, will be deemed and held fraudulent and void. Whether such diligence has been exercised in the particular case or not, is generally a question

of fact, depending upon all the circumstances. *Beebe* v. *Gardner*, 11 Conn., 104. *Edwards* v. *Gunn*, 3 id., 318.

From the facts appearing in this case, we can not find any want of diligence in the officer, or of fairness in the creditor, in relation to the arrest of Mrs. Booth on the execution. It is to be recollected that, immediately upon the rendition of his judgment, the plaintiff was entitled to an execution returnable in sixty days, or to the next term of the court, at his election, and that, at the end of three days only after judgment, Mrs. Booth left the state, and remained out of it for more than sixty days, and until after the commitment and discharge of her husband, and after the return of the execution. No laches has been or can be imputed to the plaintiff for not taking out, and attempting the levy of, his execution within the three first days after judgment, and, during the next succeeding sixty days, an execution against Mrs. Booth would have been useless, for she was beyond its reach. When the execution was taken out she was still absent, and, so far as we can discover, nothing indicated that she intended to return. Search was made for her on the 9th of May without success, and, when the execution was returned on the 12th, she was still absent; and we can not find that the return of the execution was not made in good faith and after the exercise of reasonable diligence.

No law requires the officer to retain the execution until the last day of its existence. In *Collins* v. *Cook*, (4 Day, 1,) the officer returned his execution twenty days before it ran out; and the court say, " the inquiry is not, whether after the return there was not so much time that the officer might have safely held the execution longer and then have had time to return it, but, has the principal avoided, and has the bail had a reasonable time to have surrendered up the principal before the return of the execution." If the execution is returned before the return day, the bail can take no advantage of such return unless he shows that he was prejudiced thereby. *Fitch* v. *Loveland*, Kirby, 380. If, indeed, the bail render the body of the debtor, or he render himself to the officer, to be taken on the execution, at any time before the

return day, the bail will be exonerated, because in such a case he would be prejudiced by the too early return. *Fitch* v. *Loveland*, supra. *Edwards* v. *Gunn*, 3 Conn., 316. But in this case no such render was made. Mrs. Booth did indeed return to Bridgeport before the next session of the court, that is, before the third Tuesday in July, (how long before does not appear,) and the officer was notified of her return. But she was not tendered to the officer; he was not requested to arrest her; and it does not appear that the officer, by the use of any diligence, or by any lawful effort, could have arrested her, for, though in Bridgeport, she might have been secreted there, or protected in her castle by its outer door; and it does not appear that the officer was even informed *where* in the city she could be found. Had the surety desired her arrest, he might have arrested and tendered her to the officer during the life of the execution, disregarding all obstacles interposed for her protection, but he made no effort to arrest her, and no request to have her arrested.

But again, it does not appear that she even returned to Bridgeport during the life of the execution. It is found that she returned before the next session of the court, but not how long before; and we are not authorized to presume that the execution, taken out on the 8th of May, was returnable to the next court, rather than within sixty days next coming after its date, in the ordinary way.

If we were at liberty to conjecture, we might say that it seems not improbable that Mrs. Booths' return was in fact after the return day of the execution, or, if it was before, that both the principal and the bail, instead of voluntarily tendering her to the officer, in order that she might be arrested and the bail thus exonerated, chose to cast upon the officer the whole responsibility of taking her if he chose, and if he could, while they reserved the opportunity to set up in their own defense the negligence of the officer if he did not take her, and of insisting that she was not liable to be taken, if he did. We need not add that the law will sanction no such conduct. While it requires, both of the creditor and the officer, the utmost fairness in their proceedings in order to

subject the bail, (*Johnson* v. *Smith*, 1 Root, 374,) and while it makes it the duty of the officer to exert himself diligently and faithfully for the apprehension of the debtor, and holds that, without the exercise of such diligence, a return made to subject the bail is fraudulent and void, and that even if made fairly before the return day, it is at the risk of the officer, and will be of no avail if before that day the bail render the body of the debtor, or he render himself to the officer to be taken on the execution, it also declares that the bail can not complain of such return before the return day unless he is prejudiced thereby. *Fitch* v. *Loveland, Collins* v. *Cook, Edwards* v. *Gunn, Newel* v. *Hoadley, Beebe* v. *Gardner*, supra. And surely the bail can not complain of the officer's omission to apprehend the principal, if, (which we do not mean to assert,) that omission was the natural, probable and intended consequence of his own negligence or duplicity.

The question in this part of the case is, whether there was an " avoidance " of the officer and the execution by Harriet Booth. The officer's return is *prima facie* evidence of such avoidance, and in our judgment that return is not falsified by any thing that appears in the case before us.

The rule of damages indicated by the statute, (Rev. Stat., tit. 1, § 42,) and sanctioned by our practice, is the amount of the judgment recovered against the defendants in the original suit, with interest thereon from the return of the *non est* on the execution, together with the cost of the execution and the officer's fees thereon.

And for the amount of those sums, we advise the superior court to render judgment in favor of the plaintiff in this case.

In this opinion the other judges concurred.

*Judgment for plaintiff advised.*