Peak *v.* Lemon.

Lansing.
1   295
123a   67

SPENCER S. PEAK, Appellant, *v.* FRANCIS LEMON and MARY LEMON, Respondents.

(GENERAL TERM, EIGHTH DISTRICT, NOVEMBER, 1869.)

By the present laws of this State the husband is not liable for the wrongful act of his wife, who, claiming a lien upon the personal property of a third person, refuses on demand to deliver it to such third person, who is the owner, where the wife claims such lien as her own separate property although, in fact, she has no lien, and her refusal amounts to a conversion.

And if the wife makes such refusal in the company or presence of her husband, the latter is not liable for such wrongful act of hers, nor is there any presumption that she is under the coercion, command, or direction of her husband, where she asserts her own claims in relation to her separate property.

It is the nature and not the validity of the wife's claim, respecting her separate property, which is the test of her liability and of her husband's exemption.

THE facts appear in the opinion of the court.

*A. Storrs,* for the appellant.

*Angel* and *Finch,* for the respondent.

Present—MARVIN, DANIELS, BARKER and LAMONT, JJ.

By the Court—LAMONT, J. The defendants, who are husband and wife, are jointly sued for an alleged conversion of certain personal property of the plaintiff.

On the 23d day of November, 1867, the plaintiff was the admitted owner of the property in question, which was at the place of residence of the defendants, in Cattaraugus county, where the plaintiff had, before that time, been boarding with defendants' family.

On that day a formal demand was made of the defendants for the property, when a harness and sleds, portions of it, were delivered to and taken possession of by the plaintiff. The first demand was made of the husband, in the yard of his dwelling, when he informed the plaintiff where the har

ness and the sleds then were, which were taken by the plaintiff and his friends who accompanied him. The other articles were within the house.

The plaintiff's evidence tends to show that both defendants refused, on this occasion, to deliver to plaintiff the other articles, and that such refusal was put upon the ground that the plaintiff was indebted to Mrs. Lemon in the sum of fifty dollars, "for fifty-two washings," to secure which the property was detained. The defendant, Francis Lemon, denies in his evidence that he made any objection to Peak's taking the property when the demand was made.

On the same day, in the afternoon, a constable having an attachment in favor of the defendant, Mary Lemon, attached the harness and sleds, as well as some other things in controversy. Lemon, the husband, was with the constable and told him what to attach, and Mrs. Lemon was active in procuring the things to be seized under that process. It did not appear that the attachment was authorized, so as to make it a valid process to justify the taking of the property under it. The evidence tended to show that the wife acted throughout the proceedings without any compulsion or command of the husband.

On the behalf of defendants, it further appeared, that on the application of Mary Lemon to a justice of the peace, after the plaintiff's demand of the property, but on the same day, that magistrate issued the attachment in her favor against the property of the present plaintiff, Peak. The proceedings in this action were dismissed or abandoned, on the ground that no sufficient affidavit was presented to the justice to authorize the attachment, and nothing is pretended in this action to justify it. It must be regarded as null and void. Afterward, the wife procured another attachment, which was levied upon some of the property.

A judgment was rendered against Peak, in the latter suit, in favor of Mary Lemon, for $30.20, damages and costs, March 21st, 1868, and an execution, issued thereon, was returned satisfied, within two days afterward. Peak paid up the judgment, and no property was sold on the execution.

Peak *v*. Lemon.

The counsel of the parties agreed upon the value of the property at $86.39, for which a verdict was taken by direction of the court. The case was decided upon the ground that the original demand and refusal showed a conversion by the defendants of the property in question, except the harness and sleds, and that the seizure of these, under the first void attachment, amounted to a conversion of these articles; and further, that the seizure under the second attachment did not operate to defeat the cause of action for the prior conversion.

It requires no citation of authority to show that whoever prosecutes out a void process of attachment from the court of a justice of the peace, against the property of another, and procures it to be levied upon the latter's property, becomes liable to the owner for a conversion. If, afterward, the same plaintiff again seizes the same property upon process that is valid and regular, such fact does not purge the original wrong, nor go in mitigation of damages. (*Lyon* v. *Yates* (52 Barb., 237), and cases there cited.

The first process of attachment being void, it follows that nothing can be justified that was done under it, either by the plaintiff who obtained it, or by any other party who turned out the property and caused it to be seized by the constable.

If Mary Lemon, the plaintiff in that action before the justice, had not been the wife of the other defendant, the latter would still be liable to damages to the amount of the value of the property he caused to be seized under it, on the ground of direct personal interference in causing the levy. Some interesting questions arise as to the liability of the husband and wife, separately or jointly, upon the demand of the plaintiff's property, before the attachments were issued, as well as upon the seizure of the property under each of these processes.

At common law, the husband was liable to an action for damages caused by the torts or wrongful acts of his wife during coverture, when such wrongs were prejudicial to the person or property of others.

The action for redress of such wrongs, was brought against

both husband and wife. (Reeves' Domestic Relations, 72; Cord on Rights of Married Women, §§ 1010, 1011, 1012; *Flanagan* v. *Tinen*, 53 Barb., 587.)

If the tort was done by the wife, in the company of the husband, the law presumed coercion on his part, or his direction to the wife, which excused her from responsibility; but such presumption was not conclusive, and the contrary might be established by proof. (*Cassin* v. *Delany*, 38 N. Y. R., 178; *Wagener* v. *Bill*, 19 Barb., 321.)

In 1848, a new course of legislation was initiated in our State, respecting the property of the wife; followed by important changes of the law, affecting the rights, remedies and business relations growing out of the state of coverture. The wife can now own and have the present use and enjoyment of property, both real and personal, and its rents, issues and profits; she may carry on any trade or business, and perform any labor or services on her sole and separate account; and her earnings from her trade, business, labor or services, are her sole and separate property, and may be used and invested by her in her own name. (Laws of 1860, chap. 90, § 2.)

By statute she may also sue and be sued, in all matters having relation to her sole and separate property, in the same manner as if she were sole. The husband is not liable for any of her contracts relating to her property, trade or business, and is exempted from costs in an action brought or defended by any married woman in her name. (Laws 1862, chap. 172, § 5.)

In regard to her separate property, she is made, by our law, as independent as her husband ever was in the ownership and enjoyment of his property. The earnings from her labor are her separate property. The law gives her the sole management and control of these matters, and deems her competent to act for herself, independently of her husband. Where her property, her dues and her litigation are concerned, the law now presumes her independence and personal capacity; and in relation to the management of her estate and the collection of her debts, she is no longer presumed to be under the con-

Peak *v.* Lemon.

trol or coercion of any one. In respect to her new rights and interests, the disabilities of coverture, as such disabilities existed at common law, are removed. The recent laws have surrounded her with new relations, declared her independence in certain particulars, and granted her new rights, out of which also arise new duties and obligations. The old common law is an utter stranger to the modern wife, and furnishes no decisions grounded upon that ancient relation of *baron* and *femme* which can apply as precedents to this new creature of the present day. But the principles of the common law regulating the conduct of other members of civil society who act on their individual responsibility as persons, *sui juris*, are applicable to the wife's present independent condition. The wife becomes, in law, a *femme sole*, an unmarried woman, in respect to her new situation, invested with the same rights and amenable to the same duties as other persons who are not under the guardianship or dominion of others. When she takes upon herself these new privileges she must also assume the burdens that belong to such a state of personal independence. In respect to her separate property and the earnings of her own labor, she is regarded by our law, as husbandless. In these respects the law does not now presume that the husband controls his wife, nor does it allow him to do so by any command or coercion.

In *Cassin* v. *Delany* (38 N. Y. R., 178), the questions decided arose in 1855, before the statute of 1860 and 1862 had conferred upon the wife this new capacity for trade and business on her own account. No questions there arose that are involved in this action. The old principles of the common law were applicable and were applied in that case. It has been recently decided that a married woman, engaged in the business of carrying on and operating a certain line of stages or omnibuses on her own account, is liable to third persons for injuries caused by the negligence of her servants in driving these vehicles ; that she may be sued alone for such injuries, and her husband cannot be joined with her in the action, nor

be made liable for such tort of his wife. (2 Abbott, N. S., 455, *Gillies* v. *Lent.*)

The court there say that the business which the defendant (the wife) conducts is her sole and separate property, for her husband has not, in virtue of his marital relation, any interest in, right to or control over its management; and an injury, caused by the unskillful or negligent way in which the defendant's business is conducted, is a matter having relation to her separate property. The wife may carry on business with all the incidents and rights of property. The husband is not liable for any bargains or contracts she may enter into to carry it on, nor is he answerable for a liability arising from the unskillful or negligent manner in which it is conducted.

.In another case this court, at General Term (Seventh District), has laid down a rule quite inconsistent with the presumed subordination of the wife to the husband while in his presence, which prevailed at common law when the question at issue concerns her separate property. " When a married woman acts and speaks by her husband " say the court, " his declarations and acts are hers; and she must see to it, particularly when he assumes to act and speak in her presence for her, that he speaks and acts as the law and her duty would require her to speak and act if she spoke herself. She must in such case dissent and disapprove his acts and declarations, or they should be deemed hers. She cannot stand by and hear him assert rights for her and in her behalf or do wrong for her benefit, or refuse to do what her legal duty requires, and escape responsibilty. She must be deemed to assent when she does not dissent, under such circumstances." (*Lindner* v. *Sahler*, 51 Barb., 322.)

In those transactions wherein the wife is now empowered to act for herself, as an unmarried woman, free from the control of her husband, she is liable to the same extent as any other person would be under the same circumstances; and although her husband may be present with her she is presumed by the law to act without his coercion or command. So on the other hand, the husband is free from all liability

Peak *v.* Lemon.

for her acts in such cases to the same extent that another person, not her husband, would be in her presence. Where the husband is by the law deprived of the control of his wife's actions, he is by the same law relieved from liability for her acts.

In the present case the wife (Mrs. Lemon) held a demand against the plaintiff, Peak, growing out of her earnings or services, and when the plaintiff made demand of her for his property in her house she refused to give it up, claiming to hold it on account of the debt he owed her. Here she was in the wrong, for she had no lien on the plaintiff's property by virtue of which she could detain it till the debt was satisfied. She refused to deliver the property in the presence of her husband.

Under such circumstances does the law presume her to be an independent actor, or to be under the command or coercion of her husband? If she had had such lien as she claimed, she would have had a right to detain the property until the plaintiff paid her demand. She would then be clearly acting free from the control of her husband, in that new capacity conferred upon her by recent legislation. Suppose she had held a chattel mortgage on this property for the security of the same debt under which she claimed to detain it and had refused to deliver it, but it finally turned out in proof that the mortgage had been satisfied before the demand and refusal, so that, in fact, she had no lien; or suppose it was proved that the plaintiff had not in fact executed the mortgage, or had never delivered it, or that the mortgage was a forgery; suppose she withheld the property on claim of actual pledge for the debt, but on trial the proof of pledging failed. In the cases supposed she would have no lien or right to detain the property, and her refusal would be sufficient evidence of conversion. Still she would be asserting her right to her sole and separate property, or such claim would be in respect to her separate property. Cases will often happen with married women as with other claimants of property, that their asserted title totally fails in the event.

She may, with her own money, purchase a horse from some person not the true owner. On demand made by the latter she will refuse to surrender the property, claiming to hold it as rightful proprietor. She is guilty of a conversion. I cannot conceive any difference in principle between the several cases supposed and the case now before us. The wife here claims to hold certain property as security for her own demand. She is acting in her own behalf and in relation to her separate property. It is the claim she makes, and not its successful assertion that must determine her responsibility. The husband has no power to prevent her making such a claim, nor would he be liable in case the property had been forcibly taken from her and she had brought replevin, trespass or trover for it as her own property, for the costs of litigation in case of her failure.

The learned justice who granted the new trial, was of opinion that the act of the wife in refusing to deliver up the property to the plaintiff, in her husband's presence, charged him as for a conversion, but did not charge her on account of the common law presumption, that she acted under his coercion or by his command. On the contrary, I conclude that a married woman, thus asserting her own rights or claims, acts at her peril like other persons under the same circumstances; that she is liable, and that her husband is not liable, and that it is not the *validity* but the *nature* of her claim which becomes the test of her responsibility and of his exemption. The husband in this case is not liable at all as husband, but can only be charged to the extent that he has interfered with the plaintiff's rights.

I do not mean to say, that there is not evidence in the case fit for the jury to determine, whether he did not so far intermeddle or set on the wife as to make him liable; but the jury has never passed upon that question.

The wife herself, is liable, upon her refusal to deliver, and claim to hold the property for her debt. She is liable also for the seizure under the first void attachment. The man, Lemon, denies that he refused to let plaintiff take the prop-

erty when demand was made, and the plaintiff gave contrary evidence. This dispute was for the jury to settle. It the decision here was to turn exclusively on the legal points raised by the exceptions, perhaps a new trial should be denied, but this is a case with exceptions, and the granting a new trial on a case is somewhat in the discretion of the court. In order that the case may be retried, according to the rules above indicated, I think a new trial ought to be had. The order granting a new trial is, therefore, affirmed with costs.

Order affirmed.