HANNAH M. MERRILL, Respondent, *v.* CITY OF ST. LOUIS ET AL., Appellants.

June 27, 1882.

1. Damages for physical suffering are not punitive but compensatory.

2. In an action for damages for personal injuries the verdict will not be set aside as being excessive unless it is so clearly excessive as to indicate that the jury were actuated by passion or prejudice.

3. In such an action begun by a married woman it is within the trial court's discretion to allow the husband to be joined as a plaintiff during the trial.

4. The husband may be so joined without amending the petition, if the defendant does not suggest such an amendment at the trial.

5. The joinder of the husband at the trial in such a case does not render a continuance necessary, if the defendant does not claim a surprise.

6. The failure to reswear the jury after a third person has been made a party plaintiff at the trial is not a sufficient reason for reversing the judgment, on appeal.

7. A general judgment against a married woman is not necessarily void.

8. A judgment may be rendered against a husband and wife jointly for a tort of the wife for which she and her husband are jointly liable.

9. The negligence of a married woman in the management of realty the legal title to which is in a trustee for her sole and separate use, by reason of which another receives a personal injury, is her negligence and not that of her trustee.

10. A judgment will not be reversed because of the trial court's failure to give an instruction which was not asked.

APPEAL from the St. Louis Circuit Court, HORNER, J. *Affirmed.*

LEVERETT BELL and E. B. WOLFF, for the appellant.

CHARLES T. NOLAND, for the respondent.

THOMPSON, J., delivered the opinion of the court.

Eight distinct points are urged for reversing this judgment.

1. The first is, that the damages awarded by the jury are excessive. In order to consider this point it will be necessary to state briefly the nature of the action, and the evidence. It is a suit against the city of St. Louis and against the defendants for damages sustained by the female plaintiff in falling into a coal-hole in the sidewalk, opposite property the legal title to which was vested in James H. Duffer, as trustee to the sole and separate use and benefit of his wife, the defendant Lucinda M. Duffer. There was evidence tending to show that the hole in question had existed with a cover so small or defectively fastened that it had been a nuisance dangerous to the travelling public for a considerable period of time prior to the accident; that other persons travelling along the sidewalk had fallen into it; that the police department of the city had been notified of it, but that it had not been repaired. The female plaintiff, while going to market, stepped on it; it turned up, and both her legs went into it. Another lady who happened to be walking behind her helped her out, took her to a grocery store near by and bathed her foot, and she then limped

home.    The injury which she received consisted of a sprain
of her right ankle.    She called in a physician, who prescribed
for it once ; she then treated it herself for about six weeks,
after which time she commenced visiting a hospital, where it
was treated gratuitiously for a considerable length of time, —
just how long does not distinctly appear.    She paid out no
money for medical treatment, nor, so far as appears, for
medicines.    She testifies that the injury was such that
she was confined to her room for several weeks, and for
about four months was prevented from attending to her
business, which was that of keeping a boarding-house.    But
there is no direct testimony tending to show what the
profits of her business were, or that it was profitable at all,
or that she sustained any pecuniary loss whatever ; though
we suppose, from all the circumstances, a jury might fairly
infer that she sustained some loss.

We need not again state the grounds upon which alone
courts interfere with the verdicts of juries on the question
of damages.    The disparity between the award of damages
and the evidence must be so great as to indicate clearly that
the jury acted in disregard of the evidence, and from pas-
sion or prejudice.    It is difficult to find evidence in this
record which will sustain the award of $2,000, which the
jury made.    We must suppose that their judgments were
influenced by a consideration of the age and sex of the
plaintiff, of the aggravated negligence of the city and of the
owners of this property in leaving a man-trap to exist in the
sidewalk, into which several persons had fallen.    This verdict
could not be sustained on the principle of punitive damages ;
and it is not sought to support it on that ground.    No in-
struction was asked for or given to that effect ; and until
the question is sharply presented to us for decision, we are
not prepared to sanction the doctrine that exemplary dam-
ages can be given in any case against a municipal corpora-
tion.    But damages for physical suffering are compensatory,
and not punitive ; and we may suppose that the jury awarded

this large sum principally as a compensation for the very great and long-continued pain which the plaintiff must have suffered. We have no scales with which to estimate the value of this suffering, and consequently we cannot say that the jury, in awarding the sum named, have awarded an excessive sum, much less that they have acted from passion or prejudice.

2. The suit was brought by Hannah M. Merrill alone, as though she were a *feme sole*. At the trial, after two or three witnesses had been examined for the plaintiff, she testified in her own behalf; and on cross-examination, she admitted that she was a married woman, though she had not lived with her husband for about five years. The plaintiff then moved to amend the petition so as to make her husband a party plaintiff. This was objected to by counsel for the defendant, who asked that the cause be continued. The following colloquy then took place: "*The Court:* Upon what ground do you ask for a continuance? *Counsel for defendants:* Because John Merrill is made a party plaintiff to this action. *The Court:* If you are surprised in any way, or if it will change your defence, or if you are injured in any way in making any defence you may have in this case, I will continue the case; otherwise the trial will proceed. *Counsel for defendants:* We can't say that. *The Court:* Mr. Clerk, enter the fact upon the record that John Merrill, by order of court, is made a party plaintiff to this suit as the husband of Hannah Merrill. Let the case proceed." Counsel for the defendants excepted to the ruling of the court. Another witness was then called, and the cause proceeded as though nothing had taken place. It was duly entered of record that the court had given the plaintiff, Hannah M. Merrill, leave to amend her petition by making her husband, John Merrill, a party plaintiff to the action; but no amended petition was filed, nor was the petition amended by interlineation, or otherwise.

It is now claimed that it was error to allow this amend-

ment to be made. From the answers made by Mrs. Merrill when she was interrogated with reference to this matter, we incline to agree with the learned counsel for the defendants, that she was consciously concealing the fact of her coverture, and thereby perpetrating a fraud upon the administration of justice. We also agree that, had the learned judge who presided at the trial been of this opinion, he might well, in the exercise of a sound discretion, have refused to allow the amendment to be made. But that is not the question with which we have to deal. We have to consider whether it was error prejudicial to the defendants that the amendment was made. No solid reason has been suggested to us why we should so hold. The statute (1 Rev. Stats., sect. 3568) seems sufficiently broad to cover cases of this kind. It provides : " When a complete determination of the controversy cannot be had without the presence of other parties, the court may order them to be brought in by an amendment of the petition, or by a supplemental petition and a new summons." But if the statute is not broad enough to cover such an amendment, — if this was an error, — the fact remains that it was not prejudicial to the defendants ; nothing has been suggested to indicate that they were in any way hurt by it ; and the next section of the statute commands us not to reverse the judgment for such a reason. It is as follows : " The court shall, in every stage of the action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party ; and no judgment shall be reversed or affected by reason of such error or defect."

3. Then it is claimed that the defendants at least are entitled to an amendment of the petition. There are two answers to this. 1. They did not ask that the amendment should be made in this way, or suggest to the court that they would be prejudiced if it were not made in this way. 2. They do not now suggest, nor can we see, that they were

at all prejudiced by it. As the irregularity, if it were one, did not, therefore, affect their substantial rights, we cannot, without disregarding the statute just quoted, reverse the judgment for this reason.

4. It is also objected that, upon the amendment being ordered, the defendants were entitled to a continuance, although they were not able to say that they were surprised or injured. In considering this objection it must be remembered that the court distinctly said to the counsel : " If you are surprised in any way, or if it will change your defence, or if you are injured in any way in making any defence you may have in this case, I will continue the case ; otherwise the trial will proceed." And the counsel for the defendants answered: " We cannot say that." If they could not say it then, they cannot be permitted to say it now. It is not true, as the learned counsel suggest, that the introduction of the husband as a plaintiff in this action changed in any substantial way the nature of their defence, or added any new issue for trial. The wife remained as before the meritorious cause of the action. Under the statute (1 Rev. Stats., sect. 3296), the money recovered belongs to her and not to him. He was introduced merely because the statute (1 Rev. Stats., sect. 3468) requires it. He is a mere formal party in this case. It does not appear that the fact of his being introduced would require a word of evidence to be given or excluded which would have been properly given or excluded had Mrs. Merrill been a *feme sole*. But the learned counsel suggested that this amendment deprived them of this complete defence to their action — the right to show that Mrs. Merrill, who appeared as sole plaintiff, was a married woman. What we have said shows that this was not a complete defence ; for she could avoid it by introducing her husband as a co-plaintiff, which she has done. If the learned counsel relied on this as a complete defence, and did not otherwise prepare to defend the cause, then they ought not to have stated, as they did, in reply to the

court's interrogation, that they were not surprised by the amendment. But if they had stated that they had relied on this as a complete defence, and that, therefore, they were surprised by the amendment, we think it would have been no ground for a continuance; for the surprise would have been due to a mistake of law which ordinarily does not afford ground for a continuance, or for a new trial.

5. The objection that the trial was suffered to proceed without the jury being again sworn, after the amendment was made, is of the same nature. We believe that the rule on this subject is that where, after the jury has been sworn and the trial has commenced, an amendment is introduced which substantially changes the issues to be tried or the parties to the suit, the jury must be again sworn; otherwise not. See *Williams* v. *Miller*, 10 Iowa, 344 (overruling *Cole* v. *Swan*, 4 G. Greene, 32); *Arnold* v. *Arnold*, 20 Iowa, 273; *Hinkle* v. *Davenport*, 38 Iowa, 355; *Knowles* v. *Rexroth*, 67 Ind. 59; *Kerschbaugher* v. *Slusser*, 12 Ind. 453; *Hoot* v. *Spade*, 20 Ind. 326. We have already pointed out that the amendment which was made changed neither the substantial parties nor the issues; it merely introduced a formal party. This case, therefore, was not within the rule above stated. But there is another reason why this objection is not good. The counsel for the defendants did not ask to have the jury resworn, or suggest to the court the propriety of having it done; nor did they save any distinct exception because it was not done. As there was no distinct exception saved on this point, it is not open here for review. There is excellent authority for holding that where an amendment is made on the trial of a cause after the jury has been sworn, such as may properly have required the jury to be resworn, yet if the party complaining do not ask that this be done, he is precluded from urging it as a ground for a new trial. *Williams* v. *Miller*, 10 Iowa, 344; *Arnold* v. *Arnold*, 20 Iowa, 273; *Hinkle* v. *Davenport*, 38 Iowa, 235; *Scott* v. *Moore*, 41 Vt. 205; *Hardenbough* v. *Crary*,

15 How. Pr. 307.    Although there is, perhaps, also good authority for the contrary ( *Kerschbaugher* v. *Slusser*, 12 Ind. 453 ; *Hook* v. *Spade*, 20 Ind. 326), we shall hold that the principle which is strictly adhered to in civil proceedings in this state holds in such a case as this, as well as in other cases.    This principle is that parties are not allowed to experiment with justice, — to take the chances of a favorable verdict, and then, if the verdict goes against them, raise an objection for the first time on a motion for a new trial. Where such a course is taken through an oversight, as was probably the case here, the party is precluded by his negligence, or by that of his counsel, which is the same thing, from raising and insisting upon the irregularity afterwards. If it happens designedly, which could not have been the case here, then such conduct is considered by the courts as inconsistent with the frankness and good faith which should characterize the administration of justice.

6. The next objection is a more serious one.    The judgment in this case is a general judgment against all the defendants, one of whom, Mrs. Lucinda M. Duffer, is a married woman.    It is claimed that the whole judgment is void, under the doctrine that a personal judgment against a married woman is void.    *Corrigan* v. *Bell*, 73 Mo. 53 ; *Higgins* v. *Peltzer*, 49 Mo. 152.    This claim rests upon the principle that a judgment is an entirety, and, being bad as to one defendant, it is bad as to all.    *Insurance Co.* v. *Clover*, 36 Mo. 392.    It has been frequently said by the supreme court, and perhaps also by this court, that a general judgment against a married woman is void.    These expressions must be regarded as stating a general rule, and are to be considered with reference to the questions before the court. We cannot impute to the learned judges who have used such expressions ignorance of elementary rules which are taught in every law school and laid down in every treatise on the relation of husband and wife.    There are several cases in which a general judgment against a married woman is not

void at common law, and in which the common law has not been changed in Missouri. Among these may be mentioned the case of a judgment rendered against husband and wife in a suit on an ante-nuptial contract of the wife (*Gruen* v. *Bamberger*, No. 2137 Mo. App.); also a judgment against husband and wife for a tort of the wife committed during or before coverture. *Marshall* v. *Oakes*, 51 Me. 308; *Hildreth* v. *Camp*, 41 N. J. L. 306; *Cassen* v. *Delany*, 38 N. Y. 178; *Wagener* v. *Bill*, 19 Barb. 321; *Dailey* v. *Houston*, 58 Mo. 361; 2 Kent's Comm. 149; Schouler Hus. & Wife, sect. 134. In these cases the judgment and the execution run against both husband and wife; and, at common law, the bodies of both might be taken under it. *Newton* v. *Boodle*, 9 Q. B. 963; *Hall* v. *White*, 27 Conn. 488; *Langstaff* v. *Rain*, 1 Wils. Q. B. 149; *McKinstry* v. *Davis*, 3 Cow. 339; *Potts* v. *Mellor*, 2 Stra. 1167; *Evans* v. *Chester*, 2 Mee. & W. 847; *Finch* v. *Duddin*, 2 Stra. 1237. If the husband die pending the suit, it survives against the wife. *Hyde* v. *S——*, 12 Mod. 247; *Wright* v. *Leonard*, 11 C. B. (N.s.) 258, 266 (per Willes, J.); Schouler Hus. & Wife, sect. 136. If the marriage be dissolved, either by death or divorce, it survives against her, but not against him. *Capel* v. *Powell*, 17 C. B. (N. s.) 743. If she survive the husband, and the judgment remained unsatisfied, we suppose it survives against her, and the execution may be issued against her upon it.

In New York, there are decisions upon questions analogous to the one before us; but they turn upon a statute which provides that " any married woman may sue and be sued in all matters relating to her separate property, in the same manner as if she were *sole*." N. Y. Laws of 1860, chap. 90. Under this statute it is held that, for torts growing out of the care, management, or sale of her separate estate, real or personal, the husband is not liable as at common law for a tort of his wife, in the absence of evidence connecting him personally with the wrong; but the

wife must be sued alone.  *Rowe* v. *Smith*, 45 N. Y. 230 ;
*Eagle* v. *Swayze*, 2 Daly, 140;  *Baum* v. *Mullen*, 47 N. Y.
547 ;  *Fisk* v. *Bailey*, 51 N. Y. 150.  But the wife's sep-
arate property here is a statutory *legal* estate, held, we pre-
sume, in her own name.  We have no such statute, but, on
the contrary, the wife's estate, such as exists in this case,
is an *equitable* estate, the legal title being in her husband
as her trustee.  These decisions do not, therefore, aid us.

A decision in Rhode Island furnishes a persuasive anal-
ogy.  The dam of a mill, erected by husband and wife
upon land which the wife owned in fee, overflowed land
of the plaintiff.  It was held, upon common-law principles,
that he might maintain an action against both husband and
wife for the damages.  And it was laid down as a rule,
after examining a number of early English decisions, that a
married woman may be jointly guilty with her husband of
any trespass, whether the injury arising from it be direct or
consequential.  The court declared the rule laid down by
Chitty (1 Chitty's Pl. 83), that husband and wife may be
joined in all actions in which two or more persons may be
jointly guilty, and may be charged jointly, to be well settled.
*Simmons* v. *Brown*, 5 R. I. 299.

The common-law rule, it will be remembered, which made
the husband liable for his wife's torts, proceeded upon the
ground that, as the husband succeeded, *jure mariti*, to the
entire estate of the wife, real and personal, and to the right
to her earnings, so that she could not respond in damages
for any wrong which she might commit, it was but right
that he should respond for her, so long as the coverture
lasted.  Such being the reason of the rule, if a statute in-
tervene giving the wife during coverture the sole control of
all property acquired by her in good faith from any person
other than her husband or minor children, with the right
to use and possess the same free from his control or inter-
ference, thus taking away entirely the reason of the com-
mon-law rule, it would seem on principle that the rule itself

ought to cease, though the statute makes no mention of the subject of the husband's liability for the wife's torts ; and it has been so held in a very strongly reasoned case in Illinois. *Martin* v. *Robson*, 65 Ill. 129. This decision is regarded by an eminent judge and writer as involving a sound conclusion. Cooley on Torts, 118. But as we have no such sweeping statute in this state, it would be difficult to apply the reasoning of that case to the one before us. For aught that appears in this case, the husband may enjoy the possession and fruits of a large property held by his wife as a legal estate, and also of her earnings, which could not be the case in that state.

If the judgment against Mrs. Duffer can be sustained in this case upon any principle, it must be upon the principle that the tort which is here the cause of the action was her tort, and that she and her husband are liable to be sued jointly for it, as at common law. The only torts of the wife for which she was liable thus to be sued at common law were what were known as torts *simpliciter*, unmixed with any element of contract — such as an assault, slander, and the like. *Keen* v. *Hartman*, 48 Pa. St. 497 (per Strong, J.) ; 2 Bishop's Mar. Wom., sect. 256.

But does this rule extend so far as to make a married woman liable for mere negligences in the management of property of which the legal title is in another, and of which she is what is termed in our law, the equitable owner? The distinction between legal and equitable rights and legal and equitable estates has been perpetuated in this state, although we have never had a separate court of chancery in this state, and although the legislature, in adopting the code, fused together the two systems of procedure which pertained to these two separate jurisdictions. I feel bound as a judge to recognize this distinction ; but at the same time I regard it as a reproach to an enlightened system of jurisprudence. Carrying out this rule strictly, it will result in this : The wife is merely the equitable owner of the prop-

erty; the husband who holds it as her trustee, is its legal owner. This is equivalent to saying that, for the purpose of any proceeding in a court of law, she does not own it at all. And yet she may charge it with her contracts, even by indorsing a note for the accommodation of a stranger; she may employ a mechanic to repair it, and he may charge the cost of such repairs against it under the mechanics' lien law, and sell it, if necessary, to enforce payment; she has and enjoys the exclusive right to the possession and the rents and profits of it; and she sells and conveys it in precisely the same way as she sells and conveys property which is her legal estate. The holder of the legal title is said to be a mere naked trustee — the holder of a dry trust devised to satisfy the requirement of a decayed rule of law, the substance and force of which has long since passed away.

The law imposes upon every owner of property the duty of so using it as not to injure the property or the persons of others. Infants who own property stand under this obligation, although they possess no discretion, — can do nothing with reference to it of their own volition, — must submit to its management by a guardian under the direction of a court of probate. Shall a married woman who possesses discretion, which an infant does not, and who enjoys a full power of disposition over her property, which an infant does not, stand exempt from such a liability? And if she is not answerable for negligence to any one who has been injured by its improper management, who is so answerable? Shall this responsibility fall upon the trustee, who holds what is termed the dry or naked legal title, without compensation, or shall it fall upon her who is in every matter except naked form, its owner? The law could not tolerate such a state of things as would exist, if no one stood liable for the negligent management of property thus settled upon married women. It does not alter the principle that the trustee is in this case her husband. In many cases he is a stranger to the *cestui que trust*, never sees the property, has

nothing to do with its management, and his interference therein would be resented as an impertinence, and perhaps be enjoined by a court of equity. Without any substantial power over it, except to join her in any deed she may choose to make conveying or encumbering it, upon what principle shall he be held answerable as owner of it?

But we need not pursue this inquiry through all its absurdities. A vast amount of property is now settled upon married women in this state as this property appears to have been settled. The policy of the law requires that those who thus own it beneficially should answer for the negligent or tortious management of it. The circumstance that the husband is trustee for the wife in this case, would not make him liable. But he must stand liable with her as her husband. It is the common case of a judgment jointly against husband and wife for a tort of the wife. The judgment will stand. The plaintiff will be entitled to execution running against both husband and wife, but how it will be levied and satisfied, we do not decide now; for the question is not before us. Whether the plaintiff can, in any subsequent proceeding in equity, charge the wife's abutting property with the payment of this judgment, we do not now decide or intimate an opinion.

7. It is urged that the judgment should have been reversed because the petition does not state a cause of action in favor of the plaintiff John Merrill. This is a repetition of what we have already gone over. The record proper states such a cause of action. The defendants were apprised that the amendment would be so made, and they said they were not surprised. Every office was therefore performed by the amendment, as made, which could have been performed by incorporating the amendment into the petition. The objection is therefore purely formal, and, under the statute already quoted, it will not avail to reverse the judgment. The claim that the judgment should have been arrested because the petition states no cause of action against

Mrs. Duffer, has been answered in the preceding para-graph.

8. Finally, we are asked to reverse the judgment be-cause the jury were not properly instructed as to the rela-tion which John Merrill bore to the controversy.   There are two reasons why this is not a good objection.   The first is that no such instruction was asked; and a judgment will not be reversed in a civil case, because the court did not charge upon every possible hypothesis made by the evidence, unless the appropriate instructions were asked.   *Express Co.* v. *Kountz*, 8 Wall. 342, 353; *Pernnock* v. *Dialogue*, 2 Pet. 1; *Hall* v. *Weir*, 1 Allen, 261.   The second is that, as we have already stated, John Merrill bore no relation to the controversy except that of a mere naked name of record.   That was purely a formal matter of pleading, and something with which the jury had nothing to do.

The judgment is affirmed.   All the judges concur.