WILLIS KILGORE v. ELISHA H. JORDAN.

Refusal of the Court below to grant a new trial on the ground of newly discovered evidence, affirmed on the ground of failure to use due diligence to discover it, and because the evidence was merely cumulative, &c.

Where the defendant moved for a new trial on the ground that when his Attorney announced himself ready for trial, he thought he had in his office the pamphlet laws containing a private Act on which defendant's defence depended, but after the announcement of the cause for trial, his Attorney could not find said pamphlet law &c., it was held that if there was good cause at all, it should have been made the ground of an application for a continuance.

The Court responds to the law and the jury to the facts of a cause, and a mistake by either in their several provinces, is good ground to set aside a verdict. But the views and notions which jurors, individually or collectively, may entertain of the law, cannot affect their finding.

Under an assignment of error, that the finding of the jury was contrary to law and evidence, the appellant or plaintiff in error cannot claim a reversal on the round of misdirection in the charge of the Court. But it would seem that the Court would look to the charge, although not assigned as error, in a doubtful case on the facts, to see whether the verdict was entitled to the full weight to which the verdict of a jury is entitled where the law has been properly given in charge.

See this case for a discussion as to in what respect an infant is bound, where he

fraudulently represents himself to be of full age, and thereby imposes upon another, and induces the latter to enter into a contract with him, or accept a deed from him.

Where a second grantee claimed superior right on the ground that the grantor was an infant at the date of the first conveyance, but failed to prove that the grantor had attained full age at the date of the second conveyance, the Court held that there being no considerable lapse of time between the conveyances the presumption was that he was an infant at the date of the second conveyance, and held further that the first grantee was entitled to recover the land from the second. Further, &c.

Where land is conveyed by fair sale by a minor, he cannot disaffirm the sale after arriving at full age, without refunding the purchase money.

See this case as to evidence of the purchase money paid, in a controversy respecting the disaffirmance of a conveyance of an infant, after coming of age.

Appeal from Rusk. Tried below before the Hon. William W. Morris.

Action of trespass to try title to three hundred and twenty acres of land, by appellee against appellant, commenced Oct. 17th, 1853. Plaintiff introduced a deed to himself from D. C. Clark, in whom it was agreed the title was at the date of the deed, to wit : March 22nd, 1851, and proved that defendant was in possession at the commencement of the suit. The deed acknowledged the receipt of $640 as the consideration thereof, from Jordan by Clark, the grantor.

The defendant then introduced Wm. H. Estill, whose testimony is stated in full in the Opinion. It was admitted that Clark was a minor at the date of his deed to the plaintiff. Defendant then introduced a deed from Clark to James McWilliams for the same land, dated May 21, 1852. Defendant then introduced what was called a recantation by Clark of his deed to the plaintiff. It was in the form of a notice to plaintiff, under seal, dated June 26th, 1852, and notified plaintiff that said deed was made without consideration, while he, Clark, was a minor, and that he revoked it. Defendant then gave in evidence a deed from McWilliams to himself, dated February 8th, 1853. The defendant then called the said James

McWilliams as a witness, and proved by him that he was a subscribing witness to the deed from Clark to plaintiff ; that he, witness, was Clerk of the County Court at the time ; that he was present when the deed was executed, and he saw no money paid ; that he afterwards bought the land from Clark and gave him a horse and the balance in money, estimating both at $250 ; that he sold to the defendant for $620 in money and land together, and that he made a quit claim deed to defendant ; and that he told defendant at the time he sold to him, that the plaintiff had bought the land from Clark, and claimed it ; that said land was worth in 1851 $2 per acre and now worth $3 50 an acre. Said witness also testified that the land in controversy was purchased by David Wood from one B. A. Vansickle ; that Wood sold it to the plaintiff for $620 ; that it was taken by Wood from Vansickle as a part of the consideration of a house and lot in the town of Henderson.

Plaintiff then introduced in evidence the answer of —— Nettles, as follows, the interrogatories not appearing : I know the parties. I was the agent of Elisha H. Jordan. It was the land in controversy in this suit. I asked said McWilliams if he knew whether said Clark was of age, and he told me he supposed he was, as the Court had settled with him, and that he, McWilliams, had a tract of land in the same situation, and he was satisfied with it. It was both before and after making the deed that McWilliams told me these things. I do not remember who was present. Plaintiff purchased the land from David Wood, at Shreveport, in the State of Louisiana ; he gave Wood two dollars per acre for it. " There was other proof to show that the plaintiff paid Wood a fair valuation for the land."

These were all the facts. The Judge charged the Court as stated in the Opinion, and refused to give the following asked by defendant. That if the jury believe from the testimony, that the sale of the land during the minority of Clark was to

his prejudice, then it was void, and not voidable only. And if they believe the contract was for necessaries, or if it was uncertain whether the contract was for the benefit or to the prejudice of said Clark, then the contract was voidable only, at the election of Clark.

Verdict and judgment for plaintiff. Motion for new trial, on the ground of newly discovered evidence, and on the ground of surprise at the trial, and misapprehension of the law by the jury. As to the first ground, the defendant's affidavit stated that since the trial he had discovered new evidence, material to his defence, of which he was not aware before said trial, and therefore did not produce it. The new evidence was stated in the affidavit of the witness, James A. S. Parsons, as follows : that sometime during the year 1847, 1848 or 1849, one Daniel Wood, then a citizen of Rusk County, made a trade with one B. A. Vansickle, and sold to him a certain house and lot in the town of Henderson ; and that as a part of the consideration for said house and lot (which house and lot is known as Wood's tavern) said B. A. Vansickle executed to affiant his title bond for 320 acres of land, a part of Daniel Clark's headright league of land in Rusk county ; and that at the time of said trade, said Daniel Clark was not at home ; that sometime after said sale, said Clark returned home, and affiant went to him and got him to give affiant his bond for title to said land, and take up the bond given to affiant by said Vansickle ; and that afterwards one William H. Estill called upon affiant for a title to said tract of land for one Elisha Jordan ; and affiant told him to go to Clark and get it, which he did.

As to the surprise at the trial, defendant's attorney made affidavit that when he announced himself ready for trial, he believed he had in his office a pamphlet of the Special Laws of the State of Texas, that contained a law making Daniel Clark an adult, or competent to transact business as such ; but that after the cause was announced for trial, he went to his office

to get said Act to read to the jury, and it was not to be found, and up to this time affiant has not been able to find the same.

As to the misapprehension of the law by the jury, defendant filed the affidavits of two jurors, to the effect that they had found for the plaintiff on the ground that there being no evidence that Clark was of age when he made the second deed or the recantation, they considered both titles alike defective, and that the plaintiff having the oldest deed had the best right.

Motion overruled, and defendant appealed.

*S. P. Hollingsworth* and *W. B. Turner*, for appellant.

*J. C. Robertson*, for appellee.

HEMPHILL, CH. J.   The errors assigned are,

1st. In refusing charge No. 1, asked by counsel for the defendant.

2nd. In refusing to grant a new trial.

3rd. The finding of the jury was contrary to the law and the evidence.

The first assignment has been abandoned, and we will consider very briefly the second, viz : the refusal to grant a new trial. This was sought first on the ground of newly discovered evidence.   2nd. The unexpected absence of pamphlet Acts of the Legislature, which contained matter material to the defence, and which counsel could not find when the cause was announced for trial, operated as a surprise and greatly weakened the defence.   3rd. That the jury returned a verdict under a misapprehension of the law of the case, finding for the plaintiff as having the oldest title, believing both titles to be equally defective, and not being apprised of the legal principle that a plaintiff must recover on the strength of his own title.

As to the first, viz : that of the newly discovered evidence, it is not necessary to recapitulate the rules under which an ap-

plication of this character will be supported, for the reason that the application in this case is clearly not a compliance with the requisites of the law in this particular. The affidavit of the witness, Dr. Parsons, does not show, as is supposed by defendant, that no consideration was paid to Clark for the land by the plaintiff Jordan. The affiant says nothing about the consideration passing between plaintiff and Clark. His evidence, at the best, is but cumulative, and contains nothing of any importance in addition to the evidence on the trial.

As to the second ground, viz : that of surprise, the defendant, if he really deemed the absence of the Acts of the Legislrture as prejudicial to his defence, should have moved for a continuance, or for a non-suit, with leave to set it aside. It is too late after taking the chances of a trial, to urge such cause as a ground to re-open the controversy.

The third ground, viz : that the jury mistook the law of the case, has less force, if possible, than the preceding. The Court responds to the law, and the jury to the facts of a cause, and a mistake by either in their several provinces, is good ground to set aside a verdict. But the views and notions which jurors individually or collectively may entertain of the law cannot affect their finding. Jurors may be polled, to ascertain their concurrence, but not the grounds on which they reached their conclusions. If such inquiries were tolerated, and their mistakes in law be allowed to defeat their action, trials by jury would become nearly, if not altogether an impracticability.

The third error is that the finding of the jury was contrary to the law and the evidence.

The appellee very justly contends that this assignment cannot reach any supposed misdirection in the charges of the Court ; that before the charge can be reviewed, there should be a specific assignment of error in the instruction to the jury ; and this has not been done, either in the motion for a new trial, or in the assignments of error to this Court. But as the positions in the charge have been elaborately reviewed by coun-

sel for appellants, and the like ground to some extent has been occupied by counsel for appellee in an argument distinguished for its ability, I shall consider the principal points in the charge, though they might, by possibility be excluded, if the assignment was restricted to its narrowest limits.

The charge was to the effect, that if the jury believed from the evidence, that the deed to Jordan from Clark was founded on a valuable consideration, viz : the settlement of a claim due from Clark to Wood, and that Jordan was induced to take said conveyance by the representations of Clark that he was twenty-one years of age, made with intent to deceive Jordan and cause him to receive the deed, their verdict should be for the plaintiff, as Clark cannot be heard, in such case, to gainsay' his fraud.   If Clark executed the deed to Jordan during his minority, in order to effectually disaffirm it after his majority, he must offer first to return to Jordan the consideration paid by Jordan to him for the land ; if not, the deed must be considered valid.

At the request of the defendant, the Court also charged, that an infant may disaffirm his voidable deed by the execution of another deed to a third person for the same property ; and if the jury believe from the evidence, that Clark never received any consideration for the land, then he had a right to disaffirm his former deed, and the execution of another deed by Clark was a disaffirmance of the deed to Jordan.

Before examining the question as to the effect of the fraudulent representations of a minor, that he is of age, in depriving him of the benefit of the plea of infancy, against contracts induced by such representation, it will be proper to state the facts to which this proposition refers.   Wm. H. Estill, as the agent of Jordan, first called on Dr. Parsons who referred him to Daniel Clark ; that Clark, being called on for a deed, said yes, he would make the deed to any one that David Wood desired, for he, Wood, was one of the few who had paid him full value for his land.   Estill also testified that the plaintiff had purchased

the land from David Wood ; that he asked Clark if he was of age, for he (the witness) had heard it doubted ; that Clark said yes. he was twenty-one years old, and the rumor that he was not twenty-one years old had been put out to injure him in the sale of his lands. The witness further said that upon this statement, he was induced to receive the deed from Clark to Jordan.

There being much conflict in the Common Law authorities, as to the effect of the fraudulent representations of a minor, that he is of age, upon his contracts, it may not be improper to refer to other systems, and especially our ancient Laws, which still control many rights, and to the great fountain of Roman jurisprudence, from which most of the law of the civilized world is derived ; and the principle embodied in those laws, on this point, will commend itself as eminently conducing to enforce honesty and fair dealing in contracts between man and man. The rule in Spanish Law, as deduced from Law 6, Tit. 19, Partidas 6th, is that if a minor represent himself to be of age, and from his person he appear to be so, any contract made with him will be valid, for the law protects those who are defrauded, and not those who commit fraud. By the Civil Law, as appears from 1st Domat, part 1, Book 4, Tit. 6, Sect. 2, § 2377, it appears that if a minor gives out that he is of age, and by producing a false certificate of the registry of his christening, or by some other way, has made people believe that he is a major, he cannot be relieved against those acts into which he shall have engaged any one by this surprise : thus a minor having borrowed money by such means, although he has made no good use of it, yet his obligation will nevertheless have the same effect as that of a major. As a qualification, the author adds in a note, that the rule is to be understood only of the cases where the creditor has some just reason to believe that the minor was of age. For if there was no more than a bare declaration of the minor who pretended to be of age, the creditor ought to blame himself for his credulity. We may easily

conceive of cases in which this modification of the rule would apply, as for instance the appearance may show that he is much under age. His declaration under such circumstances, that he was over age, would not be sufficient to induce any reasonable man to contract with him as a major, and could not protect the wilfully credulous. But if he or those who should control him, hold him out to the world as one of lawful age, and he engages in transactions as such, his representation that he has reached majority, especially if confirmed by his appearance, is such a fraud, in view of the Roman and Spanish Law, as to make him responsible for his contracts. In those systems of jurisprudence the effect of the fraud is clear. It binds the infant and makes valid his contract, though otherwise voidable or void.

But when we turn to the Common Law, embracing both the law and equity jurisdictions, we find confusion and conflict; the fraud binding the infant to the contract for the most part in equity, whereas in the Law Courts, it seems, where the fraud is allowed any force, to have the effect of avoiding the contract altogether, but giving the adult redress by allowing him, in trover or replevin, to recover the property fraudulently procured by the infant under his contract—the fraud amounting to a conversion. Story on Contracts embodies the doctrines in the Law Courts as follows : In § 66 he states that if the infant had been guilty of positive fraud, and thereby imposed upon the other party to his injury, he cannot set up his infancy as a defence to the action for the consideration, although the matter be in contract ; for, by his fraud, he has put himself out of the pale of his privilege, and is responsible to the same extent as if he were an adult. Fraud renders the contract void *ab initio*, and not voidable ; and therefore if an infant, by fraudulent representations, deceive the other party and induce him to part with his goods, such an agreement will be utterly void, and the infant will be liable in action of trover for the conversion. He cannot take advantage of his own wrong. Thus if

a party falsely represent himself to be of age, and goods be sold to him on faith of such representation, for which he refuses to pay, on the score of infancy, the vendor may rescind the contract and take the goods. If, in such case, the goods be parted with, the infant is liable in trover for their value, upon the ground that though he is not liable on account of his contract, he is chargeable because of his fraud, which is a tort. The author admits that most of the old cases are irreconcileable and tend in most cases to impugn the rule stated in the text. Reference is made to the old case of Johnson v. Pye, 1 Lev. 169 ; 1 Keble 905, 913, where an infant, falsely affirming himself to be of age, executed a mortgage which he afterwards sought to avoid, and the Court held that he might plead his infancy in bar to an action on the case. The ground of the decision was that the affirmation being by an infant, was void and was u ; like trespass or felony, &c., for there is a fact done. Twisden, J. doubted and thought the infant liable in like manner as he would be for trespass and cheating with false dice. Mr. Story regards this as the only equitable view of the case. For if a contract be made with an infant upon the ground of affirmation by him, that he is of full age, it is a clear and unmitigated case of fraud, being a deceitful representation of a material fact which would have operated strongly to influence the decision of the party deceived, and of which his ignorance was his injury. In such a case of fraud, what pretence is there that any contract ever existed. The contract was founded upon fraud, that is the tort was anterior to the contract, and the defence of infancy ought not to have been permitted.

The justice of these views is striking ; and if the fraud would, at law, deprive the infant of the benefit of his plea of infancy, and bind the contract, they could without difficulty be maintained. But if the contract be wholly avoided by the fraud, the adult would have the right to be placed in *statu quo*, but not by suit on the contract.

But there are very respectable authorities in which it has

been held, that action in the case would lie against an infant for fraud, thus affirming the contract, but seeking redress for the fraud ; one of which is analogous to the case now before the Court. In Fitts v. Hall, 9 N. H. Reports, 441, a distinction is suggested, that an infant is not liable in case for any fraudulent affirmation that makes part of the contract, as for a fraudulent representation as to the quality of the goods, but that for fraudulent representations anterior or subsequent to the contract, and not parcel of it, he is liable ; as for instance for an affirmation that he is of age, by which a contract is afterwards made with him, an infant is liable in case. This report of the case is taken from American Leading Cases, and the principle stated is condemned by the editors of that book as ~~~~ ~~~~ the older cases. (1 Am. Leading Cases, p. 262–3.)

case would lie or not, the adult has another re. ~~~~ses where an infant refuses to pay for property frau ~~~~ntly purchased, for he may treat the contract as null on account of the fraud, and bring replevin or trover for the goods themselves, as having never parted with his property in them. Thus in Badger v. Phinney, 15 Mass. 359, an infant, upon a false affirmation that he was of age, had bought goods from the plaintiff, who at first brought suit for the price, but the defendant pleading infancy of his intestate, suit was discontinued and the plaintiff brought replevin for the goods themselves, and it was held that the action would lie, that the goods were delivered to the infant because he undertook to pay for them, and declared that he was of age, that the plaintiff supposed he was dealing with a man of full age, and not with an infant, and the fraud which induced the contract furnished the ground for the impeachment of it.

In Mills v. Graham, 4 Bos. & Puller, the defendant, at his own request, received some skins from the plaintiff to finish them, the plaintiff promising to pay any thing that might be due. On application of plaintiff for the skins, the defendant refused to deliver them, setting up the plea of infancy. It was

held that detinue or trover would lie ; that the defendant had
fraudulently received the  goods, concealing the circumstance
of his minority, and then fraudulently set up his minority as a
defence against the plaintiff's just demand.   The goods being
wrongfully in defendant's hands from  the beginning, without
any valid contract between him and the plaintiff, they must be
considered in the same situation as if the defendant had at first
wrongfully gotten possession of them, without pretence of
bailment.

The circuity of remedy in the Law Courts, against an infant,
for fraud in his acts, is not a little surprising.  It is an estab-
lished principle, that his acts and contracts are generally void-
able at his election, but are binding on the  other party ; and
therefore, in an action on  contract, however fraudulent may
have been his conduct, the plea of infancy will avail.   His
fraud will not give the other party the benefit of the contract,
as that is voidable at the election of the infant, but it will give
him another remedy.   It will allow him also to avoid the con-
tract and recover his property, as if there had never been a
contract, although the general principle of law is, that not he
but the infant alone can avoid the contract.   But these refined
distinctions are not recognized in equity, and the general prin-
ciple in that jurisdiction is, that a fraudulent representation,
concealment or act by an infant will bind him.

In Brigham on Infancy, p. 113, it is stated that if an infant,
above the age of discretion, be guilty of fraud in affirming him-
self to be of full age, or if, by combination with his guardian,
he make any contract or agreement with intent afterwards to
elude it by plea of infancy, a Court of Equity will decree it
good, against him according to the circumstances of the fraud.

In 1 Story, Equity, § 385, several instances are given where
a man's acts or silence is such as to  encourage others to treat
his property as their own, as where knowing his title, he
stands by and encourages or does not forbid another to sell it,
or where he signs his name as a witness to the conveyance, or

allows an innocent purchaser to expend money upon the estate without giving notice of his title ; in such cases he cannot dispute the validity of the purchase ; or where there are improvements, without paying for the improvements ; and it is further said that cases of this sort are viewed with so much disfavor by Courts of Equity, that neither infancy nor coverture will constitute any excuse for the party guilty of concealment or misrepresentation ; for neither infants nor *femes covert* are privileged to practice deception or cheats on innocent persons.

In Conyert v. F. Gertchen et al., 2 Maddox, 40, an infant a few months before he became of age, obtained a portion of his stock by transfer from his trustees, his brother representing to them that they ran no risk in doing so : on a bill filed to compel re-payment by the trustees, held that the concealment of his infancy, under the circumstances, was a fraud and precluded him or his assigns from calling for a re-payment. The Vice Chancellor, in his Opinion, referred to Marlow v. Pitfield, 1 P. Wms, 558, where it was determined that if an infant borrow money and apply it in payment for necessaries, though at Law he is not liable to the lender for the money, yet in Equity the lender stands in the place of the creditor who was paid for the necessaries, and may recover there, as the other might have done at Law.

In Watts v. Creswell, 9 Viner, 415, a tenant for life borrowed money, and his son who was next in remainder and an infant, was a witness to the mortgage deed. The mortgagee was relieved on the ground of fraud in the infant, by not giving notice of his title, Lord Cowper saying that if an infant is old and cunning enough to contrive and carry on a fraud, he ought to make satisfaction for it. *in a court of Equity.* (2 Eq. Ab. 515.)

In Savage v. Foster, 9 Mod. 35, (citing from the case in Maddox,) the Court held that, in the case of fraud, infancy or coverture shall be no excuse, and the Court not only recognized the case of Watts v. Creswell, (*supra*,) but also relied on Clerk v. Bedford, 13 Vin. Ab. 536–7, in which case Clerk, an

infant, and clerk to an attorney, had a mortgage on his master's estate and engrossed a subsequent mortgage of the same to another, without giving notice that the estate was mortgaged before to him, for that reason, on the ground of the fraud, his mortgage was postponed.

There is a case in Comyn's Digest, 294, title CHANCERY, (I cite from Reeves' Domestic Relations, p. 260,) which shows that where an infant has entered into an agreement with a fraudulent intent to derive an advantage to himself by not fulfilling his engagement, he may be compelled, in Chancery, to perform it. As where a father was about to make a settlement of £1000 out of the estate which by the law would descend to an infant, upon the younger son, the infant promised the father that if he would desist from making the settlement, he would give to the younger son £1000, therefore the father desisted from making the settlement. The infant refused to fulfil his promise, relying upon his infancy. But Chancery would not suffer this to avail, and compelled him to pay the younger son the £1000.

In Overton v. Banister, 3 Hare, 503, payment by a trustee to an infant *cestui que trust*, nineteen years of age, on the false representation by herself and her parents, that she had attained the age of twenty-one, held to be a discharge to the trustee for the sum so paid. (Adams' Equity, 176.)

These authorities are sufficient to show that the fraudulent acts, concealments or representations of infants, when made or done with a view to deceive and defraud others, will be as binding upon them as upon an adult, and their contracts will be enforced against them.

In this case, the infant not only represented himself to be of age, but there were other circumstances inducing that belief. He appears to have had no guardian ; was trafficking and selling his lands, as if he was a major. From the statement of McWilliams to Nettles, it appears that the Court had settled with him, meaning, I presume, that he had a final settlement in

the County Court in relation to his father's estate. From his false representations and other circumstances well calculated to mislead the plaintiff as to his age, we might well hold, there being no distinction with us between Law and Equity, that the first instruction was sound as a legal proposition, and that the deed was binding upon the infant who could not gainsay his fraud.

But it is not absolutely necessary that we should decide conclusively upon this point. The defendant is not in a condition to set up a disaffirmance by the infant. He holds under resale of the infant, but this was made before his age, as must be presumed until the contrary is proved, unless such presumption was rebutted by considerable lapse of time between the sales.

Further he has not offered to repay the money which the infant received in consideration for the sale. In Cummings v. Powell, 8 Tex. R. 93, it was stated, in effect, that an infant on attaining age could not claim a disaffirmance of the sale of lands made by him during infancy, without refunding the purchase money ; that such was the rule under the laws of Spain, (Febrero, Vol. 5, p. 379,) and it had received the sanction of Courts eminent for their wisdom and authority ; and several authorities were cited in support of the proposition. In addition to these may be cited Hill v. Anderson, 5 Smedes & Marshall, 216 ; and Smith v. Evans, 5 Humphreys, 70. In this latter case the complainant, after attaining majority, filed a bill to disaffirm a conveyance of lands made, and the con sideration of which he had received, during infancy. The Court decreed the disaffirmance, but directed the consideration money and interest to be refunded. Chancellor Kent, in his Commentaries, vol. 2, p. 240, affirms the rule, that if an infant avoids an executed contract when he comes of age, on the ground of infancy, he must restore the consideration which he had received. See also to the same effect Hullyer v. Bennet, 3 Edwards' Chan. 222.

The plaintiff stood in no fiduciary relation to the infant

Clark. There is no evidence of any fraud or imposition on the part of the plaintiff; nor is there any circumstance which would take the case out of the great rule, that he who seeks equity must do justice; and if he disaffirm his conveyance, for infancy, he must restore the consideration. There was no error in the second proposition of the charge, to the effect that Clark could not disaffirm without restoring the consideration money.

There is no error in the judgment and it is ordered that the same be affirmed.

Judgment affirmed.