Wirt v. Dinan.

44 583
91 291

JOHN WIRT, Appellant, v. ANNA DINAN AND JOHN DINAN, Respondents.

Kansas City Court of Appeals, February 2 and March 2, 1891.

1. **Married Women:** TORTS: JOINT LIABILITY OF HUSBAND AND WIFE: COMMON LAW AND STATUTE. At common law, husband and wife are jointly liable for the torts of the wife, known as torts *simpliciter*, unmixed with any element of contract; and this rule is unaffected by the statutory provision respecting married women.

2. ———: DECEIT OF WIFE: CONTRACT: EXCEPTION. The exception to the general rule that a joint action against husband and wife for the fraud and deceit of the latter cannot be maintained where the deceit is connected with a contract, when so broadly stated, seems to abrogate the rule.

3. ———: ———: ———: RULE AND EXCEPTION. A review of authorities on the subject as well as of the cases relating to infancy establishes that the general rule, that the husband and the wife are jointly liable for the deceit of the wife, is subject to the qualifications:

    (1) That where the wife by false and fraudulent representations obtains property and retains it, if a recovery can be had without giving effect to the contract in a joint action against her and her husband to recover the loss actually sustained for her tort, her disability of coverture cannot be successfully pleaded in bar of the action.

    (2) That the disability cannot be invoked as a defense in those cases where the false and fraudulent representations, which induced the making of the contract and not a part of it, though connected with it, are antecedent to it.

4. ———: ———: JOINT LIABILITY OF HUSBAND: CASE ADJUDGED. A married woman without the knowledge of her husband stole certain cattle, and represented to plaintiff that she was a widow and owner of the cattle, and then sold them to him. *Held* plaintiff can maintain a joint action for damages for the deceit against the husband and the wife.

5. **Attachment:** AFFIDAVIT: PETITION. Where the facts constituting the cause of action are fully set out in the petition and affidavit for attachment (the latter being under the twelfth

Wirt v. Dinan.

subdivision of the section of the statute prescribing grounds of attachment), if the petition states a cause of action, the affidavit is sufficient, and it is error to quash the attachment.

6.  **Appellate Practice :** QUASHING ATTACHMENT.  On appeal from a final judgment, the appellate court on a proper record, will review the action of the trial court in quashing a writ of attachment, and, if need be, direct the trial court to set aside its order quashing the writ of attachment and the levy thereof and restore the attachment so quashed.

*Appeal from the Bates Circuit Court.*—HON. D. A. DEARMOND, Judge.

REVERSED AND REMANDED.

*John T. Smith*, with *Railey & Burney*, for appellant.

(1)  The husband and wife are jointly liable for damages growing out of the torts of the wife committed in the husband's absence and without his consent. *Munter v. Bande*, 1 Mo. App. 489; *Merrill v. The City of St. Louis*, 12 Mo. App. 466; *Merrill v. The City of St. Louis*, 83 Mo. 244; *Alexander v. Lydick*, 80 Mo. 342; *Dailey v. Houston*, 58 Mo. 361 ; 2 Bishop on Married Women, 256–7; 2 Kent's Comm., p. 149, note 1, and p. 241, note 1; *Goulding v. Davidson*, 26 N. Y. 604; *Fitzgerald v. Quann*, 12 Cent. Rep. ( N. Y.) 745; *Heckle v. Lurvey*, 3 Am. Rep. 366.   (2)   A married woman, or an infant, is liable for torts even though connected with a contract if the recovery is to be had in an action *ex delicto* in form.   Coke on Litt. 351 b ; Tyler on Infancy and Coverture, p. 380, also p. 180, sec. 123 ; 1 Chitty on Pleadings, p. 135, top p. 104; Cooley on Torts, 112–115 ; 2 Pom. on Eq. Juris., sec. 945 ; Bishop on Contracts, secs. 901–2; Parsons on Con. [ 6 Ed.] 317, and note x; 2 Kent's Comm. [ 12 Ed.] 241 ; *Kowing v. Morely*, 49 N. Y. 192; *Bank v. Mott*, 27 N. Y. 635 ; *Rice v. Boyer*, 7 W. Rep. ( Ind.) 68 ; *Comm. v. Carroll*, 124 Mass. 30; *Comm. v. Pratt*, 126 Mass. 462; *Fitts v.*

*Hall*, 9 N. H. 441; *Mfg. Co. v. Heil*, 7 Cent. Rep. (Pa.) 179; *Hewitt v. Warren*, 10 Hun, 564; *Vasse v. Smith*, 6 Cranch, 226 (L. Co. Pub. Co. Ed. 207); Reeve's Dom. Rel. [2 Ed.] 72, 73; *Franklin's Appeal*, 4 Cent. Rep. (Pa.) 322. (3) The old authorities are modified by the later decisions and the legislative enactments enlarging the rights of married women and their capacity to hold and manage their separate property. "Reason is the soul of the law; the reason of the law being changed, the law is also changed." 7 Coke, 7; *Merrill v. City of St. Louis, supra;* Cooley on Torts, p. 118; Brown's Legal Maxims [5 Ed.] p. 133, marg. p. 118; *Berley v. Rampacher*, 5 Duer, 186; *Baum v. Mullen*, 47 N. Y. 577; *Vanneman v. Powers*, 56 N. Y. 39, 42.

*Holcomb & Smith* and *Parkinson & Graves*, for respondent.

(1) Torts are divided into two classes: Torts *simpliciter*, and torts arising out of contract. 2 Rapalje & Lowrance Law Dictionary, pp. 1281, 1282, title Torts. (2) The only pure tort that defendant in error, Anna Dinan, is charged to have committed is that of stealing cattle from, and the property of, one August Schuman. This affords the plaintiff in error, Wirt, no cause of action. (3) The statements Anna Dinan is charged in the affidavit to have made as to her being a widow, her property, where she was going, etc., are altogether immaterial and afford plaintiff in error no ground of complaint against her or her husband and codefendant. (4) Stripped of all superfluity, the plaintiff's alleged ground of attachment is that Anna Dinan, being the wife of John Dinan, in the absence of her husband and without his knowledge or consent, representing herself to be the owner of certain cattle, of which she was not the owner as she well knew, sold the cattle to plaintiff and received from him in payment therefor $498.90,

intending thereby to cheat, defraud, etc. ; which cattle were afterwards taken from plaintiff by the owner, to his damage, etc. ( 5 ) Plaintiff's sole cause of action and ground of attachment grows out of, and is founded upon, the contract of purchase and sale between him and defendant, Anna Dinan, a married woman. ( 6 ) At common law a married woman could not be held to answer in damages for a tort arising from, or growing out of, contract, her contract being void. Cooley on Torts, pp. 106–116 ; Pomeroy's Rem. & Rem. Rights, sec. 507, p. 631 ; Dicey's Parties to Actions [2 Ed.] side pp. 20, 21, 437 and 476 ; Addison on Torts [Woods' Ed.] sec. 27, p. 26, and sec. 51, p. 58 ; 2 Addison, sec. 1204, p. 441, and last clause of sec. 1288, p. 529 ; 1 Chitty's Pleading, p. 87 ; 2 Pomeroy's Eq. Jur., sec. 945, p. 464, note 2 ; Parsons' Contracts, 317 ; 1 Bishop's Married Women, secs. 906, 907 ; 2 Bishop's Married Women, secs. 261–263 ; 2 Kent's Commentaries, p. 241 ; *Loan Ass'n v. Fairhurst*, 9 Ex. 423 ; 23 L. J. Ex. 163 ; *Wright v. Leonard*, 11 C. B. N. S. 258 ; *Campbell v. Stokes*, 2 Wend. 137 ; s. c., 19 Am. Dec. 561 ; *Hewetl v. Warren*, 10 Hun, 564 ; *Merrell v. Aden*, 19 Vermont, 505 ; *Elwell v. Martin*, 32 Vermont, 217 ; *Gibson v. Spear*, 37 Vermont, 311 ; s. c., 88 Am. Dec. 659 ; *Keen v. Hartman*, 48 Pa. St. 497 ; s. c., 88 Am. Dec. 472 ; *Woodward v. Barnes*, 46 Vermont, 332 ; s. c., 14 Am. Rep. 626 ; *Merriam v. Cunningham*, 11 Cush. 40 ; *Lowell v. Daniels*, 2 Gray, 161 ; s. c., 61 Am. Dec. 448 ; *Mueller v. Kaesman*, 84 Mo. 318 ; *Hall v. Corcoran*, 107 Mass. 251 ; s. c., 9 Am. Rep. 30 ; *Man v. Bircher*, 40 Vermont, 326 ; *Hall v. Cappell*, 7 Wallace, 542 ; *Prescott v. Norris*, 32 N. H. 101 ; *Burnes v. Hill*, 19 Ga. 22 ; *Owens v. Snodgrass*, 6 Dana ( Ky.) 229 ; *Barnes v. Harris*, Busbee ( N. C.) 15. ( 7 ) The effect of modern legislation in this state prior to the revision of 1889, which is subsequent to the injuries complained of by plaintiff in error, has not been to increase or extend,

the common-law liability of married women. *Nicholson v. Flynn*, 24 Mo. App. 571 ; *Hemelreich v. Carlos*, 24 Mo. App. 272-3. (8) In the states in which their legislation has been such as to extend the common-law liability of married women, it has been held that the husband was exempt from the liability of his wife. *Martin v. Robison*, 65 Ill. 129 ; s. c., 16 Am. Rep. 578; *Norris v. Corkhill*, 32 Kan. 409. (9) But for the acts of plaintiff in error no injury would have resulted from the wrong of defendant, Anna Dinan, of all of which defendant, John Dinan, is shown to have been ignorant and innocent. For this reason, if for no other, he ought not to be held responsible. *Bank v. Armstrong*, 62 Mo. 60-67 ; *Trigg v. Taylor*, 27 Mo. 245 ; *Carroll v. Railroad*, 14 Mo. App. 490 ; *Crews v. Garneau*, 14 Mo. App. 505.

SMITH, P. J.—This was an action to recover damages for deceit. The petition stated that the said defendants are now, and were at the times hereinafter mentioned, married and living together as husband and wife ; that said defendant, Anna Dinan, without the knowledge or consent, and in the absence, of her said husband, did, on or about the thirty-first day of August, 1888, for the purpose and with the intent at the time of cheating, wronging and defrauding plaintiff and of obtaining money and property from him, at the county of Bates and state of Missouri, unlawfully, wilfully and feloniously take, steal and carry away from one August Schuman twenty-eight head of cattle, the personal property of said August Schuman, of the value of $550 ; that afterwards, in pursuance of said fraudulent design to cheat, wrong and defraud plaintiff, and to obtain money and property from him under false pretenses, the said Anna Dinan, in the absence of and without the knowledge of her husband, did take twenty-six head of said cattle to the farm of plaintiff in the county of Cass, and state of Missouri, and did then and there falsely, fraudulently and

feloniously represent to plaintiff that she was at the time a poor unmarried woman of the name of Maggie O'Grady, and a widow whose husband was dead, and who was traveling to the northern part of said state to see her relatives; that the said twenty-six head of cattle were her property and all her property she had, and that she was greatly in need of money, and asked and solicited plaintiff to purchase said cattle from her in order that she might be enabled to continue her said journey; that each and all of said representations and statements were untrue and false and were by said defendant known to be false, and were made by her knowingly and wilfully for the fraudulent purpose of obtaining money from plaintiff; that plaintiff, relying upon said false and fraudulent representations and statements and believing them to be true, did purchase the said cattle and pay to the said Anna Dinan the sum of $498.90 in cash, whereby the said Anna Dinan did obtain from plaintiff the said sum of $498.90 by means of the false statements and conduct, and the fraudulent representations aforesaid; that afterwards the said August Schuman on the twenty-second day of October, 1888, being the owner of said cattle as aforesaid, did reclaim the same and take them from the possession of the plaintiff, wherefore the said defendant, Anna Dinan, has obtained and received from plaintiff, by reason of her false and fraudulent conduct and statements aforesaid, the sum of $498.90, to his damage in the said sum of $498.90, and for which plaintiff prays judgment against defendants, and for his costs and for all proper relief.

The defendants interposed a demurrer to the petition on the ground mainly, it " showed on its face that the plaintiff's alleged cause of action grew out of a contract between plaintiff and defendant, Anna Dinan, who was shown to be a married woman, whose contract was void, and from which no cause of action could arise in favor of the plaintiff and against defendants or either of them." The demurrer was sustained; the plaintiff refusing to

further plead, final judgment was rendered therein. The plaintiff brings the case here by appeal.

I. The single and decisive question which we are obliged to decide in this case is whether the defendants, who are husband and wife, are liable to the plaintiff for the fraud and deceit of the wife. It is a very well-established rule of the common law that the husband and wife are liable for the wife's torts. *Munter v. Bande*, 1 Mo. App. 484; *Alexander v. Lydick*, 80 Mo. 341; Cooley on Torts, 115; *Daily v. Houston*, 58 Mo. 361; Schouler Dom. Rel. 102, 103. A wife is liable for her batteries, slanders, trespasses, frauds and other torts in respect of which she may be sued jointly with her husband. 2 Bishop on Mar. Wom., secs. 225, 256. The various acts which constitute torts may be classed as injuries to person, property or reputation. But more particularly under the head of deceit, slander and libel, conspiracy, assault and battery, trespass, conversion, etc. 2 Bouvier Law Dic., Tort. 737. Since a *feme covert* can commit crime she should seem *a fortiori* to be responsible for her civil torts, there being a difference, it is perceived, between the torts and her contracts. Her husband is liable with her. 1 Bishop on Mar. Wom., sec. 43. The common-law rule of liability of the husband and wife for the torts of the wife is not of universal application. For that reason the only torts of the wife, for which she and her husband were liable to be sued jointly, were known as torts *simpliciter*, unmixed with any element of contract. *Merrill v. St. Louis*, 12 Mo. App. 466; *Keene v. Hartman*, 48 Pa. St. 497; *Woodward v. Banes*, 48 Vt. 336; *Liverpool Adelphi Loan Ass'n v. Fairhurst*, 9 Exch. 420; 2 Bishop on Mar. Wom., sec. 256. Admitting the general liability of the husband and wife for the wife's torts, it was said by POLLACK, C. B., in *Adelphi Loan Ass'n v. Fairhurst, supra:* "But when the fraud is directly connected with the contract of the wife and is the means of effecting it and part of the same transaction, the wife cannot be responsible, and

the husband be sued for it together with the wife." We have other cases to the point that an action may be in form as for tort, yet, if the subject of it be based upon a contract, there can be no recovery where the action on the contract would directly fail, and this, whether the defendant were an infant or adult. *Keene v. Hartman*, 58 Pa. St. 497. And it is not believed that this rule would be affected by any statutory provision respecting the rights of married women. It may be that the wife since the enactment of the general married woman's property statutes can bind herself upon her implied warranty of title to any separate statutory personal property sold by her, and that an action could be maintained against her for a breach thereof, yet it is not believed that the liability of the husband and wife for the torts of the wife is affected by these statutes. *McElfish v. Keekendall*, 36 Ia. 224; *Ferguson v. Brooks*, 67 Me. 251; *Kowing v. Morely*, 57 Barb. (N. Y.) 479; *McQueen v. Feelyham*, 27 Tex. 463.

The authorities, so far as we have been able to see, are all agreed that the husband and wife are jointly liable for the fraud or deceit practised by the wife when damage results. But this rule is subject to the exception that, if the deceit is connected with the contract, it is otherwise. Now, it is quite obvious that this exception abrogates the rule itself. It is well settled that the action of deceit is always connected with the contract. *Barnes v. McMullins*, 78 Mo. 260; *Bullock v. Wooldridge*, 42 Mo. App. 356; 2 Hilliard on Torts [2 Ed.] 73. And the same is true when the tort is a fraud. From its very nature it can only exist in connection with some form of contract. 2 Hilliard on Torts [2 Ed.] 141. So it must unevitably follow that as the husband and wife are not liable for the fraud or deceit of the wife when connected with a contract that they are not liable at all for her fraud or deceit, since there can be no actionable fraud or deceit except when connected with contract. In other words she may, at

pleasure, indulge in any kind of fraudulent and deceitful practice resulting in damage to others, and yet for the wrong she cannot be sued herself alone because *feme covert*, nor jointly with her husband, for the reason that her tort is inseparably connected with a contract. The rule on the subject, therefore, may be stated to be this: That the husband and wife are liable for the fraud and deceit of the wife, unless such fraud and deceit are connected with a contract, and, as every action for fraud or deceit is connected with contract, they are not liable at all for her fraud or deceit in any case.

The rule itself is clear, explicit and well understood, but may it not be that the exception, as we have stated it to be, is entirely too broad and sweeping? And may it not be that the exception, with its proper qualification, is not repugnant to the rule? The function of the exception is to limit or restrain the scope and operation of the rule, and not to destroy it. It would seem that the exception should be such as to give it effect without rendering it wholly inoperative. With the view of accomplishing this it is worth while to widen the range of our inquiry.

The proposition is undeniably true that, wherever a married woman could plead coverture because the action is based upon a contract instead of a tort, a minor could under similar circumstances plead infancy. In Kent's Commentary, at page 149, note 1, it is stated: "The question of liability in action for torts, where it is more or less nearly connected with contracts, is similar in the case of married women and of infants." Judge COOLEY in his work on torts, page 116, in the discussion of the liability of married women for their torts, says: "But the element of contract is as important here as in the law of infancy." The reasons which would preclude the indirect redress of the infant's breach of contract by treating it as a tort will preclude the like redress in the case

of a married woman. It is stated in Bacon's Abridg-
ment, Infancy & Age, 1, 3, that, "If an infant without
any contract wilfully takes away the goods of another,
trover lies against him." And it is also said that if he
takest he goods under the pretense that he is of full age
trover lies, because it is wilful and fraudulent trespass.
So if a man affirms himself of full age when he is an
infant, and thereby procures money to be lent to him on
mortgage, he is liable for deceit. 1 Sid. 183 ; Com.
Dig. Actions, etc., 10. And there is no sound reason
why an infant should not be chargeable in damages
for a fraudulent misrepresentation, whereby another
receives damages. *Fetts v. Hall,* 9 N. H. 441. In the
last cited case it was stated : But the representation
* * * in the present case, that the defendant was of
full age, was not part of the contract, nor did it grow
out of the contract, nor in any way result from it. It
is not any part of its terms, nor was it the consideration
upon which the contract was founded. No contract
was made about the defendant's age. The sale of the
goods was not a consideration for this affirmation or
representation. The representation was not a founda-
tion for or of *assumpsit.* The matter arises purely *ex
delicto.*

The fraud was intended to induce, and did induce,
the plaintiff to make a contract for the sale of the hats ;
but that by no means makes it a part and parcel of the
contract. It was antecedent to the contract, and if an
infant is liable for a positive wrong connected with a
contract, but arising after the contract has been made
( *Vasse v. Smith,* 6 Cranch, 231 ; *Homer v. Thwing,* 3
Pick. 492 ; 1 Esp. Rep. 172; *Bristow v. Eastman,*
Peake's Rep. ( S. C.) 222 ), he may well be answerable
for one committed before the contract was entered into,
although it may have led to the contract. * * * An
infant may be bound in equity by a contract which the
other party has been induced to enter into by its
fraudulent representation or concealment," citing *Lord*

*v. Flynham & Webb*, 2 Ves. Sen. 212 ; *Envoy v. Nicholas Brown*, Chan. Rep. 358 ; Fonblanque's Eq. [Am. Ed.] 30, note 2. "At law he is not bound by the contract, although it was procured by his fraudulent representation that he was of full age. If in equity, the infant may be bound by the contract, because of his fraud in procuring it, he may well at law be answerable for the previous deceit through which it was procured, if he thereby obtained property of another and refuses performance on his part." This decision is pronounced by the editors of American Leading Cases, in their notes to *Tucker v. Moreland*, volume 1, to be clearly unsound. It was disapproved in *Gibson v. Spear*, 38 Vt. 311. But approved by Judge REDFIELD, in *Town v. Wiley*, 28 Vt. 359, also in *Eckstein v. Frank*, 1 Daily, 334. Mr. Justice COOLEY in his work on torts, page 110, note 3, remarks that "with deference it may be suggested whether, when a party has never intended to rely upon the contract of an infant, or to have any contract dealings at all with one, justice to him and protection to the infant does not require that the fraud shall be dealt with in like manner as would any other distinct tortious act." Instead of the case of *Prescott v. Norris*, 32 N. H. 101, overruling *Fitz v. Hall*, as the defendant supposes, it is cited with approval. In 1 Parsons on Contracts, 317, it is said : "But when the tort, though connected by circumstances with the contract, is still distinguishable from it, there he is liable. As, if he hires a horse for an unnecessary ride, he is not liable for the hire, but, if in the course of the ride he wilfully abuses and injures the horse, he is liable for the tort. And, if he should sell the horse, trover would lie, nor would his infancy be a good defense. Nor need his tort be subsequent to the contract. Thus in case a bond given by an infant and received by the obligee, in reliance upon his false and fraudulent representations of his being of full age, the bond cannot be enforced against him. But as soon as the infant makes and

delivers it he is guilty of fraud, for which an action may be maintained for the loss sustained. And this statement of the law finds support in the adjudicated cases. *Homer v. Thwing, supra; Badger v. Phinney,* 15 Miss. 359; *Kilgore v. Jordan,* 17 Tex. 341; *Walker v. Davis,* 1 Gray, 506; *Eckstein v. Frank,* 1 Daily, 334; *Peigne v. Sutcliff,* 4 McCord (S. C.) 216. In Story on Contracts, section 556, it is stated, "that, if the infant had been guilty of positive fraud and thereby imposed upon the other party to his injury, he cannot set up his infancy as a defense to the action for the consideration, although the matter be in contract; for by his fraud he has put himself out of the pale of his privilege, and is responsible the same as if he were an adult." In *Eckstein v. Frank, supra,* it was said that, "when an infant obtains property by falsely representing himself to be of full age, an action of tort may be maintained against him, either to recover it back or to recover damages, upon the ground that he obtained it wrongfully." "If an infant is old and cunning enough," says Lord Chancellor COOPER, "to contrive and carry out a fraud he ought to make satisfaction for it (2 Eq. Ca. Ab. 515), and the good sense and justice of requiring him to do so has been held in numerous cases cited to be applicable in a court of law as in a court of equity." The supreme court of Indiana in *Rice v. Boyer,* 7 W. Rep. 68, which was a case where a minor by falsely and fraudulently representing that he was twenty-one years of age induced a person, who relied upon such representations, to sell him certain personal property, the minor made away with the property and repudiated the contract, refusing to pay his note for the purchase price, etc. Say, *inter alia,* that, although the minor's "fraud had enabled him to secure and make way with the property of one who had trusted in his good faith to his representations and had exercised due care and diligence, we are unwilling to sanction any rule which will enable an infant, who has obtained property of another by

falsely and fraudulently representing himself to be of full age, to enjoy the fruits of his fraud, either by keeping the property or selling it to another, and, when asked to pay its just and reasonable value, successfully pleaded his infancy,—both a shield and a sword,—and this is the result which the principles of justice forbid ; for they require that it should be merely a shield of defense.''

In the case of *Wheeler & Wilson Mfg. Co. v. Heil*, 7 Cent. Rep. (Pa.)179, the defendant, a married woman, entered into a written contract with plaintiffs, by the terms of which the latter delivered to her one of their sewing machines for a certain specified rent, and for a certain specified time, at the end of which it should be returned to plaintiff. Defendant got possession of the machine under this contract, and at the expiration of the time refused to surrender it. Plaintiff then sued defendant and her husband for damages based upon the tort of the wife in converting the property to her own use. The lower court compelled the plaintiff to take a nonsuit, on the ground that the suit was based upon the written contract of the married woman which was void. The supreme court reversed the judgment, and held that, when the remedy for the tort is only for damages by suit, the husband is liable, with the wife, citing 2 Kent. Com. 149 ; *Franklin's Appeal*, 4 Cent. Rep. 322. In the last cited case it was held that when a tort is committed by the wife she is personally liable unless her husband was both present and directed the doing of it at the time. This was a case where the wife had tortiously converted to her own use certain securities which had been intrusted to her.

The rulings of the English cases are not in line with many of the American decisions to which we have referred. *L. A. L. Ass'n v. Fairhurst*, 9 Exch. 422 ; *Wright v. Leonard*, 11 Com. Bench, 257 ; *Capel v. Powell*, 17 Con. Bench, 743. It must be admitted that the course of decision even in this country is by no

means uniform in respect to the question we are consid-
ering.   Authorities of great respectability have been
cited which are at variance in their statement of the law
with many of those referred to and relied on by us.   It
would be utterly impossible to reconcile the various con-
flicting and inharmonious judicial utterances on  this
question.   We must be guided in our decision by those
authorities announcing principles applicable to the case,
which most commend themselves to our approving judg-
ment as being consonant with right and justice.   From
these authorities we conclude that the broadness of what
we have termed the exception to the general rule of lia-
bility of the husband and wife for the deceit of the wife,
when damages result, is subject to these qualifications ;
that is to say, *first*, that where the wife by false and
fraudulent representations obtains property and retains
it, if a recovery can be had without giving effect to the
contract in a joint action against her and her husband
to recover the loss actually sustained for her tort, her
disability of coverture cannot be successfully pleaded in
bar of the action ; and,  *second* , that the disability
cannot be invoked as a defense in those cases where
the false and fraudulent representations which induced
the making of the contract and not a part of it, though
connected with it, are antecedent to it.   With these
qualifications the exception can  stand  without being
repugnant to the general rule of liability of the husband
and wife.

In the case at bar the wife, who was in the posses-
sion of the fruits of her own larceny, went to the defend-
ant, a stranger, and falsely and fraudulently represented
herself to be a widow and the owner of the stolen prop-
erty.   She offered to sell  him the property.   He was
induced to purchase by reason of her fraudulent repre-
sentations.   Certainly, had it not been for these he would
not have made the purchase.   Had she stated herself to
be a married woman, and that the property was stolen
by her, it is clear he would not have entertained any

proposition to sell. It was these representations that led up to the sale. They were antecedent to it, and, though connected with it, were not a part of it. It was by the means of these snares that the plaintiff was entrapped and deceived. The foundation of the plaintiff's action is these false and fraudulent affirmations. They preceded the transaction of the sale and the damage. This action is not on the wife's implied warranty. It is not to give effect to the contract directly or indirectly. It is for fraud to recover the money paid for the stolen property. It proceeds from the theory that the contract is void; that it is as if it had never been. It is in form *ex delicto* and not *ex contractu*. It is for a tort of the wife, as the form of it clearly indicates. According to the rule of liability of the husband and wife for the tort of the wife as we have stated it to be, we must conclude that the petition states a cause of action against the defendants.

ELLISON and GILL, JJ., believing the petition states a cause of action, concur in the result. The judgment will, therefore, be reversed and the cause remanded.

## ON MOTION TO MODIFY OPINION.

SMITH, P. J.—The ground of the attachment and the cause of action stated in the petition are identical. The latter we have held to be sufficient, and it results from the very clearest implication that the former is also sufficient. As the undoubted effect of the ruling upon the petition is, to declare the ground of the attachment legally sufficient, we had not supposed that matter any longer open to question. The ground of attachment, and the cause of action stated, are so connected and related that the determination of the one to be sufficient is inevitably a like determination of the other.

But it has been suggested that the propriety of the action of the trial court in quashing the writ of

attachment is not the subject of review on the appeal in this case. From the interlocutory judgment of the court quashing the writ of attachment, the plaintiff appealed, which appeal we dismissed, on the ground that from such a judgment appeal would not lie. *Wirt v. Dinan*, 41 Mo. App. 236. The plaintiff now prosecuted his second appeal from the final judgment on the merits, the record of the cause before us presenting an exception to the ruling of the court in quashing the attachment. Does the appeal bring up for our consideration the ruling of the trial court upon the motion to quash the writ of attachment? An appeal from the final judgment in a case brings up for review the intermediate rulings of the court, which have been duly excepted to, and not otherwise waived. Miller's Plead. & Prac. 704.

The plaintiff's attachment was dissolved, not upon a plea in abatement, but upon a motion quashing the same ; hence the cases cited, where the attachment was disposed of upon the issues made by plea in abatement, are not applicable here. *Lane v. Fellows*, 1 Mo. 353, was where the attachment was dissolved on motion of the defendant. There was judgment by default for want of plea. The plaintiff brought error to reverse the judgment. It was said by Judge PETTIBONE, who delivered the opinion of the court, "that a writ of error does not lie to reverse an order of the circuit court dissolving an attachment." This was ruled upon the authority of *Shortz v. Quigley*, 1 Binn. (Pa.) 226. But, notwithstanding this opinion of the learned judge, he proceeded to pass upon the question of the sufficiency of the affidavit for the attachment. In *Curtis v. Little*, 7 Mo. 453, the attachment was quashed, on motion of the defendant, on the ground of the insufficiency of the affidavit. The plaintiff appealed from the final judgment. The propriety of the action of the circuit court in quashing the attachment was passed upon. It was held that the affidavit was good, and that the court of

common pleas committed error in quashing the attachment. The judgment was reversed, and the cause remanded. A similar rule of practice has been observed in many other antecedent and subsequent cases. *Alexander v. Haden*, 2 Mo. 229; *Hackney v. Williams*, 3 Mo. 455; *Stevens v. Robins*, 5 Mo. 18; *Livengood v. Shaw*, 10 Mo. 273; *Kritzer v. Smith*, 21 Mo. 297; *Henderson v. Drace*, 30 Mo. 358; *Jasper Co. v. Chunantt*, 29 Mo. 358; *McDonald v. Fist*, 53 Mo. 343; *Bank v. Knox*, 47 Mo. 333; *Musgrove v. Matt*, 90 Mo. 107; *Claflin v. Hoover*, 20 Mo. App. 314. While it is not true that every order of a court made in the progress of a cause can be made the subject of an exception and review on writ of error or appeal, yet to say that a ruling, like the one under consideration, is in no case the subject of review by the revisory courts, would indeed be a very great reproach to our system of remedial justice. The plaintiff alleged in his affidavit a sufficient cause for an attachment. The writ was issued and the property of the defendant seized. The court, on motion of defendant, erroneously quashed the writ and ordered a release of the attached property. Now we are asked to hold that, though the plaintiff had a good cause of action and a sufficient ground for attachment, the erroneous action of the court, in respect to the attachment, is not the subject of revision and correction; that there is no remedy. To this view of the case we cannot assent. *Ubi jus, ibi remedium*. It follows from these observations that, the circuit court should set aside its order quashing the writ of attachment and the levy thereof, and reinstate the attachment so quashed, which is hereby accordingly directed. All concur.